No. 13-1571

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

MULVEY CONSTRUCTION, INC. and ONE BEACON INSURANCE CO.,

Appellants,

v.

BITUMINOUS CASUALTY CORPORATION, and BROWN INSURANCE
AGENCY OF VIRGINIA, INC.

Appellees.

## ON PETITION FOR APPEAL FROM THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF WEST VIRGINIA BLUEFIELD DIVISION

## APPELLEES' BRIEF

Avrum Levicoff, Esquire
W.Va. I.D. #: 4549
Levicoff, Silko & Deemer, P.C.
650 Smithfield St., Ste. 1900
Pittsburgh, PA 15222
412-434-5200

*Counsel for Appellee,
Bituminous Casualty
Corporation*

Pamela C. Deem, Esquire
W.Va. I.D. #: 976
Kay Casto & Chaney, PLLC
707 Virginia St., East, Ste. 1500
Charleston, WV 25301
304-345-8900

*Counsel for Appellee,
Brown & Brown Insurance
Agency of Virginia., Inc.*

Henry Willett, III, Esquire
Va. I.D. #: 44655
Christian & Barton, LLP
909 E. Main St., Ste. 1200
Richmond, VA 23219
804-697-4130

*Counsel for Appellee,
Brown & Brown Insurance
Agency of Virginia., Inc.*

{L0540241.1 }

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................... I

TABLE OF AUTHORITIES ................................................................ II

CORPORATE DISCLOSURE STATEMENTS ................................... X

STATEMENT OF THE CASE ............................................................. 1

  I.  Introduction .............................................................................. 1

    A.  Nature Of The Case ............................................................ 1

    B.  Counter Statement Of Facts ............................................... 1

    C.  Course Of Proceedings And Disposition Below ............... 5

SUMMARY OF THE ARGUMENT ................................................. 14

ARGUMENT ................................................................................... 18

  I.  Standard Of Review ................................................................ 18

  II.  Discussion Of The Issues ...................................................... 19

    A.  Virginia Law Controls ..................................................... 19

    B.  Estoppel Cannot Extend Coverage Of The Bituminous Policy ................... 34

    C.  The District Court Properly Rejected Appellants' "Insured Contract" Theory ................................................. 45

    D.  The District Court Properly Granted Leave To Amend ............................. 50

    E.  West Virginia's Borrowing Statute Dictates That Virginia's Statute Of Limitations Applies to Bar Appellants' Third Party Beneficiary Claim ........... 54

CONCLUSION ................................................................................ 61

CERTIFICATIONS ......................................................................... 63

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ................ 64

# TABLE OF AUTHORITIES
## CASES

7-Eleven, Inc. v. De'pt. of Envtl. Quality, Inc., 590 S.E.2d 84, 89 (Va.App. 2003) ...................................................................................................36

Adkins v. W. & S. Indem. Co., 186 S.E. 302 (W.Va. 1936) ...................................28

Ala. Elec. Coop., Inc. v. Bailey's Constr. Co., Inc., 950 So.2d 280 (Ala. 2006) ...40, 43

Alex Robertson Co. v. Imperial Cas. & Indem. Co., 8 Cal.App.4th 338 (1992) ....51

Allianz Ins. Co. v. Gold Coast Partners, Inc., 684 So.2d 336 (Fla.App. 1996).......50

Am. Country Ins. Co. v. Kramer Bros., Inc., 699 N.E.2d 1056, 1060 (Ill.App. 1998)...........................................................................................................45

Am. Econ. Ins. Co. v. Tx. Instruments, Inc., 2006 WL 616017 (N.D.Tex. 2006) ..50

Am. Hardware Mut. Ins. Co. v. BIM, Inc., 885 F.2d 132, 139-40 (4th Cir. 1989) ..45

Am. Ref-Fuel Co. of Hempstead v. Resource Recycling, 671 N.Y.S.2d 93 (N.Y.App. 1998)................................................................................................51

Ann Taylor, Inc. v. Heritage Ins. Serv. Inc., 259 S.W.3d 494 (Ky.App. 2008)......40

APAC-Atl., Inc. v. Prot. Serv., Inc., 397 F.Supp.2d 792 (2005)...............................7

Atl. Bulk Carrier Corp. v. Milan Express Co., Inc., 2010 WL 2929612, *4 (E.D.Va. 2010) .................................................................................................55

Bailes v. Erie Ins. Prop. & Cas. Co., 2010 U.S. Dist. LEXIS 11328 (S.D.W.Va. 2010)...........................................................................................................24

Barnes Group, Inc. v. C&C Prod., Inc., 716 F.2d 1023, 1039-1040 (4th Cir. 1983) ...................................................................................................... 22, 31

Blais v. Allied Exterminating Co., 482 S.E.2d 659, 661 (W.Va. 1996).................62

Blue Cross & Blue Shield of Va. v. Wingfield, 391 S.E.2d 73, 74-75 (Va. 1990).38

Bowman v. Curt G. Joa, Inc., 361 F.2d 706, 717 (4th Cir. 1966) ............................19

Boyd v. Pancake Realty Co., 46 S.E.2d 633 (W.Va. 1948) ...................................11

Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc., 266 S.E.2d 887 at 890 (Va. 1980) ................................................ 44, 45

Bradley Real Estate Trust v. Plummer & Rowe Ins. Agency, 609 A.2d 1233, 1235 (N.H. 1992)......................................................................45

Braunstein v. Pickens, 406 Fed.App. 791, 797-98 (4th Cir. 2011) .........................20

Breton, LLC v. Graphic Arts Mut. Ins. Co., 2009 U.S. Dist. LEXIS 104846, n.2 (E.D.Va. 2009) ......................................................................47

Broderick Inv. Co. v. Strand & Nordstrom Stailey, 794 P.2d 264, 266 (Colo.App. 1990)......................................................................45

Capitol Env't. Serv., Inc. v. N. River Ins. Co., 536 F.Supp.2d 653 (E.D.Va. 2008) ........................................................................51

Castillo v. Emergency Med. Assocs., P.A., 372 F.3d 643, 646 (4th Cir. 2004).......20

Commw. v. Gall, 789 N.E.2d 586 (Mass.App. 2003) ............................................40

Dunn v. Rockwell, 689 S.E.2d 255, 262 (W.Va. 2009) ................................... 62, 63

Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) .........................20

Empire Fire & Marine Ins. Co. v. Bell, 55 Cal.App.4th 1410, 1423 n.25 (1997)...46

Energy Corp. of Am. v. Bituminous Cas. Corp., 543 F.Supp.2d 536 (2008) .... 8, 50

Foman v. Davis, 371 U.S. 178, 182 (1962) ...........................................................56

G.E. Tignall & Co., Inc. v. Reliance Nat'l Ins. Co., 102 F.Supp.2d 300 (D.Md. 2000)............................................................... 40, 43

Gaither v. City Hosp., Inc., 487 S.E.2d 901, 906 (W.Va. 1997) ............................63

Gerald T. Dixon, Jr., LLC v. Hassell & Folkes, P.C., 723 S.E.2d 383, 385 (Va. 2012)......................................................................60

Gilbert Spruance Co. v. Pa. Mfr. Ass'n Ins. Co., 603 A.2d 61 (N.J.Super. 1992)..30

Goodenough v. Province, 78 Va.Cir. 263, 265-66 (Charlottesville 2009).............61

Hare v. Conn. Mut. Life Ins. Co., 173 S.E. 772 (W.Va. 1934) .............................27

Harris v. Criterion Ins. Co., 281 S.E.2d 878, 881 (Va. 1981) ................................44

Harris v. Jones, 550 S.E.2d 93 (W.Va. 2001).........................................................63

Harrison v. Piedmont Aviation, Inc., 432 F.Supp. 980, 981 (S.D.W.Va. 1977) .....58

Hartford Ins. v. Ohio Cas. Ins. Co., 189 P.3d 195, 201-02 (Wash.App. 2008).......37

Hendrix v. EvenFlo Co., Inc., 609 F.3d 1183 (11th Cir. 2010)...............................44

Hitt v. Cox, 737 F.2d 421 (4th Cir. 1984).................................................................41

Hormel v. Helvering, 312 U.S. 552 (1941) ..............................................................25

Howe v. Howe, 625 S.E.2d 716 (W.Va. 2005).......................................... 21, 32, 33

Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 674 F.Supp. 1334 (D.D.C.
    1987) .................................................................................................................31

Ins. Co. of N. Am. v. Atl. Nat'l Ins. Co., 329 F.2d 769 (4th Cir. 1963)...................38

Int'l Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Etrangers a
    Monaco, 329 F.3d 359, 362-63 (4th Cir. 2003) ......................................................20

Int'l Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Etrangers a
    Monaco, 540 U.S. 1106 (2004) ...........................................................................20

Int'l Group v. Cincinnati Ins. Co., 2007 U.S. Dist. LEXIS 65798, 2667984
    (E.D.Pa. 2007) ..................................................................................................51

Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co., 680 N.E.2d 1200 (N.Y.
    1997)..................................................................................................................49

Jaynes v. Newport News Sch. Bd., 12 Fed.App. 166, 179 (4th Cir. 2001) ..............20

John Hancock Mut. v. Va. Nat. Bank, 181 S.E.2d 618, 620 (Va. 1971) .................44

Johnson v. Neal, 418 S.E.2d 349 (W.Va. 1992).................................... 21, 22, 26, 34

Johnson v. United Excel Corp., 2009 WL 248113, *9-10 (Kan.App. 2009) ..........45

Joy Tech., Inc. v. Liberty Mut. Ins. Co., 421 S.E.2d 493 (W.Va. 1992).... 10, 23, 29

KBS, Inc. v. Great Am. Ins. Co., 2006 U.S. Dist. LEXIS 88520 (E.D.Va. 2006) ..48

{L0540241.1 }                                          *IV*

Kirschner v. Broadhead, 671 F.2d 1034 (7th Cir. 1982) ...........................................44

Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)............................ 20, 58

Lee v. Saliga, 373 S.E.2d 345, 349 (W.Va. 1988)............................................ 21, 22

Lerner v. General Ins. Co. of Am., 245 S.E.2d 249 (Va. 1978) .............................52

Liberty Mut. Ins Co. v. Triangle Indus, 957 F.2d 1153, 1156 (4th Cir. 1992).........47

Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 390 S.E.2d 562 (W.Va. 1990) passim

Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 928 (4th Cir. 1995)...........................................................................................19

Lowe v. Sporicidin Int'l, 47 F.3d 124, 131 n.6 (4th Cir. 1995)................................24

Lubrizol Corp. v. Nat'l Union Fire Ins. Co., 200 Fed.Appx. 555 (6th Cir. 2006) ...50

Lynam v. Foot First Podiatry Center, P.C., 919 F.Supp. 1141, 1149, n. 7 (N.D.Ill. 1996).........................................................................................................56

MACTEC Eng'g & Consulting, Inc. v One Beacon Ins. Co., 2007 WL 2300706 (2007)...........................................................................................................37

Maersk Line. Ltd. v. U.S., 513 F.3d 418, 421 (4th Cir. 2008) ................................20

Marley Mouldings, Inc. v. Suyat, 970 F.Supp. 496, 499-500 (W.D. Va. 1997) .....61

Marlin v. Wetzel Cnty. Bd. of Educ., 569 S.E.2d 462 (W.Va. 2002) .......... 6, 15, 48

McKinney v. Fairchild Int'l, Inc., 487 S.E.2d 913, 922 (W.Va. 1997)............ 58, 62

Mount Vernon Fire Ins. Co. v. Kent Dev. of N.Y., Inc., 1996 WL 521426 (S.D.N.Y. 1996)...........................................................................................50

Mountain Fuel Supply v. Reliance Ins. Co., 933 F.2d 882, 889 (10th Cir. 1991)....43

Mylan Labs., Inc. v. Akzo, 2 F.3d 56, 60 (4th Cir. 1993) .......................... 19, 25, 28

N. Am. Precast, Inc. v. General Cas. of Wis., 2008 U.S. Dist. LEXIS 26844 (S.D.W.Va. 2008)........................................................................................10

Nadler v. Liberty Mut. Fire Ins. Co., 424 S.E.2d 256, 261 (W.Va. 1992) 21, 30, 33, 34

Nat'l Marine, Inc. v. Glencourt, Ltd., 1998 WL 204734, *3 (E.D.La. 1998) .........45

Nationwide Mut. Ins. Co. v. Smith, 172 S.E.2d 708 (W.Va. 1970) .......................27

Nautilus Ins. Co. v. S. Vanguard Ins. Co., 899 F.Sup.2d 538 (N.D.Tex. 2012) .....46

Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 439 (4th Cir. 2011)................................................................... 20, 61

NL Indus., Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 322 (3d Cir. 1995) ..30

Norman v. Ins. Co. of N. Am., 239 S.E.2d 902 (Va. 1978) ............................ 12, 38

Pa. Cas. Co. v. Chris Simopoulos, M.D., Ltd., 369 S.E.2d 166, 169 (Va. 1988)....44

Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)..... 10, 24

Pardee Constr. Co. v. Ins. Co. of the West, 92 Cal.Rptr.2d 443, 446 (Cal.App. 2000).................................................................37

Parsley v. GMAC, 280 S.E.2d 703, 707 (W.Va. 1981)..........................................26

Pekin Ins. Co. v. Am. Country Ins. Co., 572 N.E.2d 1112 (Ill.App. 1991) ..... 41, 43

Penn Coal Corp. v. William H. McGee & Co., Inc., 903 F.Supp. 980 (1995)..........7

Penske Truck Leasing Co., L.P. v. Home Ins. Co., 674 N.Y.S.2d 400 (N.Y.App. 1998).................................................................51

Porowski v. Rehm, 2008 WL 5273086 (N.J.App. 2008) ........................................45

Postlewait Constr., Inc. v. Great Am. Ins. Co., 720 P.2d 805 (Wash. 1986) ..........40

Prime Ins. Syndicate v. Concepcion, 2008 U.S. Dist. LEXIS 17982 (D.Nev. 2008) ................................................................................46

Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust, 413 S.E.2d 599 at 603 (Va. 1992) ............................................44

Reed v. Lockheed Aircraft Int'l, A.G., 1991 U.S. App. LEXIS 1096, at *2 (4th Cir. 1991).................................................................58

Rekhi v. Wildwood Indus., Inc., 61 F.3d 1313 (7th Cir. 1995)................................47

Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631 (4th Cir. 2005)37

Rominick v. Inter-Ocean Cas. Co., 169 S.E. 446 (W.Va. 1933) ............................27

S.M. Smith Ins. Agency v. Hamilton Fire Ins. Co., 71 S.E. 194 (W.Va. 1911)......26

Seals v. Erie Ins. Exch., 674 S.E.2d 860 (Va. 2009) ................................37

Sharp v. Richmond Life Ins. Co., 183 S.E.2d 132, 135 (Va. 1971) ................ 38, 39

Shenandoah Life Ins. Co. v. French, 373 S.E.2d 718 (Va. 1988) ..........................40

Singer v. Dungan, 45 F.3d 823, 827 (4th Cir. 1995) ................................20

Smith v. Bonds, 813 F.2d 1299 at 1303 (4th Cir. 1987)................................... 10, 24

State ex rel. Vapor Corp. v. Narick, 320 S.E.2d 345 (W.Va. 1984)......................36

State Farm Fire Ins. Co. v. Rakes, 49 S.E.2d 265 (Va. 1948) ................................39

Stauffer v. Fredericksburg Ramada, Inc., 411 F.Supp. 1136, 1137 (E.D.Va. 1976)
.................................................................................61

T.H.E. Ins. Co. v. City of Alton, 227 F.3d 802, 806 (7th Cir. 2000)................ 43, 45

Talkington v. Atria Reclamelucifers Fabrieken BV, 152 F.3d 254, 260 (4th Cir.
1998)..................................................................47

TIG Ins. Co. v. Sedgwick James of Wash., 184 F.Supp.2d 591 (S.D.Tex. 2001) .41,
43

TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 57 S.E.2d 199, 200 (Va.
2002).................................................................37

Tow v. Miners Mem'l Hosp. Ass'n, Inc., 305 F.2d 73 (4th Cir. 1962)............. 11, 31

Tremco, Inc. v. Mfr. Ass'n Ins. Co., 832 A.2d, 1120, 1121-1122 (Pa.Super. 2003)
.................................................................................51

Tribeca Broadway Assoc., LLC v. Mount Vernon Fire Ins. Co., 774 N.Y.S.2d 11
(N.Y.App. 2004)..................................................40

True Oil Co. v. Mid-Continent Cas. Co., 173 Fed.Appx. 645 (10th Cir. 2006).......43

Uniwest Constr., Inc. v. Amtech Elevator Serv., Inc., 699 S.E.2d 223 (Va. 2010)
................................................................ 14, 50

Uniwest Constr., Inc. v. Amtech Elevator Serv., Inc., 714 S.E.2d 560 (Va. 2011) 14

Va. Auto. Mut. Ins. Co. v. Brillhart, 46 S.E.2d 377 (Va. 1948)..............................39

Va. Sur. Co., Inc. v. N. Ins. Co. of N.Y., 866 N.E.2d 149 (Ill. 2007) ....................50

Via Net v. TIG Ins. Co., 211 S.W.3d 310 (Tex. 2006)............................................40

Vigortone AG Prods., Inc. v. AG Prods, Inc., 316 F.3d 641 (7th Cir. 2002)..........47

W. Am. Ins. Co. v. Meridian Mut. Ins. Co., 583 N.W.2d 548 (Mich.App. 1998) ..45

W.O. Grubb Steel Erection, Inc. v. 515 Granby, LLC, 78 Va.Cir. 463, 467-68

   (Norfolk 2009)......................................................................................................64

Wainwright v. Charles Constr. Co., Inc., 755 N.Y.S.2d 751 (N.Y.App. 2003)......51

Weitz Co. v. Mid-Century Ins. Co., 181 P.3d 309 (Colo.App. 2007) ....................37

Wells v. Liddy, 186 F.3d 505, 520 (4th Cir. 1999) ......................................... 44, 47

Yost v. Travelers Ins. Co, 1999 U.S.App. LEXIS 13665 (4th Cir. 1999)......... 20, 33

Young v. FDIC, 103 F.3d 1180, 1191 (4th Cir. 1997) ..................................... 19, 24

Zornes v. Specialty Indus., 1998 U.S.App. LEXIS 31686, n.8 (4th Cir. 1998) .......13

## RULES

1 A.L.R.3d 1139..................................................................................................39

Rule 54(b), Fed.R.Civ.Proc...............................................................................13

## STATUTES

16 Am. Jur. (2d) Conflict of Laws §18................................................................33

16 B.J. Appleman, Ins. Law & Practice, §9088..................................................44

29A Am. Jur. "Insurance" §1135.........................................................................38

Restatement (Second) of Conflicts of Laws §188 .......................................... 26, 31

Restatement (Second) of Conflicts of Laws §193 ...................................................7

Va. Code §8.01-230 .............................................................................................62

Va. Code §8.01-246 ........................................................................60

Va. Code Ann. §38.2-1802 ...........................................................36

W.Va. Code §33-12-11 ..................................................................25

W.Va. Code §55-2-17 .....................................................................59

W.Va. Code §55-2-6 .......................................................................60

## OTHER AUTHORITIES

2 Couch Cyclopedia of Insurance Law §540 .........................................39

General Obligations Law, §5 ........................................................49

Wright & Miller, Fed. Prac. & Pro., §4512 ......................................44

## CORPORATE DISCLOSURE STATEMENTS

Pursuant to Fed.R.App.Proc. 26.1 and Local Rule 26.1,

Bituminous Casualty Corporation who is an Appellee, makes the following disclosure:

1.    Is party a publicly held corporation or other publicly held entity?  No.

2.    Does party have any parent corporations?  Yes.  Bitco Corp., Old Republic General Insurance Group, Inc., Old Republic International Corp.

3.    Is 10% or more of the stock of the party owned by a publicly held corporation or other publicly held entity?  No.

4.    Is there any other publicly held corporation or other public held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  Yes.  Bitco Corp., Old Republic General Insurance Group, Inc., Old Republic International Corp.

5.     Is party a trade association?  No.

6.    Does this case arise out of a bankruptcy proceeding?  No.

Date:  _July 29, 2013_____        ___/s/ Avrum Levicoff_____
                                                           Avrum Levicoff, Esquire

Pursuant to Fed.R.App.Proc. 26.1 and Local Rule 26.1,

Brown & Brown Insurance Agency of Virginia, Inc., who is an Appellee, makes the following disclosure:

1.     Is party a publicly held corporation or other publicly held entity?  No.

2.     Does party have any parent corporations?  Yes.  Brown & Brown, Inc.

3.     Is 10% or more of the stock of the party owned by a publicly held corporation or other publicly held entity?  Yes.  Brown & Brown, Inc.

4.     Is there any other publicly held corporation or other public held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  Yes.  Brown & Brown, Inc. (parent).

5.      Is party a trade association?  No.

6.     Does this case arise out of a bankruptcy proceeding?  No.

Date:  __July 29, 2013_____          ___/s/ Pamela C. Deem___
                                          Pamela C. Deem, Esquire

{L0540241.1 }                  *xi*

## STATEMENT OF THE CASE

### I.  Introduction

Appellants' Brief omits a Statement Of The Case in derogation of Rule 28(a)(6), Fed.R.App.Proc.

### A.  Nature Of The Case

This is an insurance coverage case.  Appellants call this a case about "which insurance is primary and which is secondary," Brief, 5, but, in fact, it is about whether Appellants can enjoy benefits from a policy under which they are not insured.

### B.  Counter Statement Of Facts

Despite Appellants' efforts to deemphasize DCI's West Virginia affiliation by omitting and taking significant liberties with key facts, the undisputed fact is that DCI is a Virginia corporation.[1]  Indeed, DCI registered its "principal office" with the Commonwealth of Virginia State Corporation Commission at P.O. Box 186, Bluefield, Virginia.    JA412-413.    DCI evidently conducted business operations both in Virginia and West Virginia at various times and in diverse

---

[1] In an Intervenor Complaint in this case, DCI describes itself as "a Virginia corporation authorized to do business in the State of West Virginia."  DCI's Intervenor Complaint makes no other reference to an affiliation with the State of West Virginia.

locations.  JA414.[2]  Contrary to Appellants' statement that DCI has "its principal office in Bluefield, West Virginia" Brief, 2, the record does not clearly reflect the location of DCI's "principal office" at any particular time, and there is no evidence regarding the location of DCI's "principal office" in 2002, when it applied for the policy that was issued.

Appellants state: "Bituminous was aware that DCI's principal place of business was in West Virginia, as it was listed there in an underwriting file provided by Bituminous."  Brief, 3.  The record referenced at JA410 is a standard ACORD form dated August 5, 1999, years prior to the subject policy, and does not deal with the policy at issue.  Rather, it deals with "UMBRELLA LIABILITY COVERAGE," which Bituminous did not issue.  The insurance agency identified in the form is "Riedman Corporation," not the agency involved with the subject policy.  The address shown in the 1999 form, "HWY 460, Bluefield, West Virginia," is not associated with DCI, nor is that address reflected in the 2002 Application for the subject policy.  *See,* n.2, *supra.*

Appellants also overlook several significant characteristics of the July 19, 2002, Mulvey/DCI Subcontract:  (1) it contains a broad indemnification provision,

---

[2] According to the Application submitted by DCI for the subject Bituminous policy, aside from its registered Virginia corporate address, DCI maintained two premises locations, one at 601 Floyd Street, Blacksburg, Virginia, and the other at 2511 Washington Street, Bluefield, West Virginia.  JA414.

JA041, ¶9; and (2) it contains a provision including a requirement that DCI maintain several types of insurance, but not specifically commercial liability insurance. JA042, ¶10. The second provision also requires DCI to "…furnish to Contractor [Mulvey] certificates naming project Owner & Mulvey Construction, Inc. as certificate holder & as an additional insured…." Id.[3] The Subcontract contains a mandatory arbitration clause and mandates that: "all matters…shall be governed by the laws of New York." JA043, ¶22.

The subject policy is a renewal policy, JA045-165, covering a period from May 20, 2002 through May 20, 2003. JA084. It is by all indicia a Virginia policy. The Application was taken and submitted by Brown & Brown ("B&B"), an independent insurance agency, through its office located in Richlands, Virginia. JA414-423. A form contained within the policy states that "…you may contact the insurance company issuing this insurance at the following address…Bituminous Insurance Companies, 7201 Glen Forest Drive, Suite 200, Richmond, Virginia, 23226-3759."[4] JA050. According to the declarations page of the policy, JA085, the address of the policyholder is "P.O. Box 186, Bluefield, Virginia." The policy lists as insured premises the same two locations described in the Application. *See,*

---

[3] The Subcontract states: "Should Subcontractor fail to procure and maintain the required insurance, Contractor shall have the right to procure and maintain such insurance for and in the name of Subcontractor at Subcontractor's cost." JA042.

[4] That form also identifies the Virginia Bureau of Insurance.

n.2.    No other location is described in the policy.[5]   An endorsement entitled "ADDITIONAL INSURED-LESSOR OF LEASED EQUIPMENT" designates "William Scotsman, Inc.".    JA120.    The policy contains a provision entitled "Changes," which states:

> This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

JA091.    No endorsement extending any additional insured coverage was subsequently added to the policy.  Appellants assert that "Brown & Brown did everything that was necessary to provide additional insured status to McDonald's and Mulvey."  Brief, 4, 40.  It is undisputed, however, that they did not secure the issuance of any additional insured coverage endorsement.

Appellants ignore several key facts regarding the "Certificate of Liability Insurance" on which their entire case is predicated.  The certificate is dated August 9, 2002, and is the standard ACORD form.  The following conspicuous disclaimer language appears at the top:

---

[5] According to information contained in the record, several months after the policy went into effect, a copy of the policy was mailed under a cover letter dated October 1, 2002, to Robert Deeb, President of DCI, at P.O. Box 186, Bluefield, Virginia. JA046, DCI's registered corporate "principal office" address as registered with the Virginia State Corporation Commission.  JA413.

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

Beneath the heading "Coverages" appears the following:

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED…THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.

The certificate identifies Mulvey as the "Certificate Holder," and states: "Certificate Holder is named as an additional insured in regard to the General Liability Policy."

Despite the disclaimers, there is no evidence that Mulvey sought or obtained a copy of the policy, nor made any additional inquiry. Mulvey did maintain liability insurance with One Beacon. The record does not reflect whether Mulvey charged the cost of this to DCI as provided for in the Subcontract. *See*, n.3, *supra*.

## C. Course Of Proceedings And Disposition Below

Appellants say nothing in their Brief about the American Arbitration Association proceeding they initiated against DCI in New York, asserting claims for indemnification, and breach of the insurance requirements of the Subcontract. While the arbitration was pending, on October 11, 2007, Appellants instituted this

action, asserting claims based on West Virginia law. They alleged that the certificate effectively extended additional insured coverage under either a contract or an estoppel theory. *See*, Marlin v. Wetzel Cnty. Bd. of Educ., 569 S.E.2d 462 (W.Va. 2002). Later, Appellants asserted that the Subcontractor's indemnification provision was an "insured contract" under the Bituminous policy, and that as an indemnitee Mulvey must "stand in the shoes" of the insured for coverage purposes. JA197-206. *See*, Marlin, *supra*. Bituminous answered, explicitly asserting that controlling Virginia law does not endorse any of these concepts. JA167-181.

In March 2009, Bituminous moved for summary judgment, arguing that Virginia law controlled the case. JA224-230. Appellants' Response (Docket No. 74),[6] conceded "that there is a competing argument for Virginia law to apply as Virginia is the apparent state of contract formation."[7] Focusing on additional insured coverage rather than the policy itself, Appellants argued that West Virginia had the most significant relationship to the controversy, but only because the "risk insured" against was located in West Virginia.[8] Evidently, Appellants sought to

---

[6] Mulvey's Response is not contained in the Joint Appendix.

[7] Elsewhere the Response acknowledged "the location of the formation of the contract appears to favor application of Virginia law…." (Docket No. 74).

[8] Appellants relied on the choice-of-law rule stated in Restatement (Second) of Conflicts of Laws §193, and Penn Coal Corp. v. William H. McGee & Co., Inc., 903 F.Supp. 980 (1995). Section 193 has been held inapplicable to commercial liability insurance policies because they are typically issued in one state, but cover

sidestep the seminal West Virginia case, Liberty Mut. Ins. Co. v. Triangle Indus.,

Inc., 390 S.E.2d 562 (W.Va. 1990), which squarely holds:

> In a case involving the interpretation of an insurance policy, made in
> one state to be performed in another, the law of the state of formation
> of the contract shall govern, unless another state has a more
> significant relationship to the transaction and the parties, or the law of
> the other state is contrary to the public policy of this state.

Syl.pt.1., 390 S.E.2d at 563.[9],[10]

The District Court rejected Appellants' reasoning, following Energy Corp.

of Am. v. Bituminous Cas. Corp., 543 F.Supp.2d 536 (2008), and applying

Triangle. The District Court found that the contract was formed in Virginia, but

that West Virginia did not enjoy a more significant relationship, thus mandating

application of Virginia law. JA383-396. Because, under Virginia law, the

issuance of a certificate does not extend the insurance coverage, the District Court

granted judgment in favor of Bituminous as to Appellants' contract claim. The

District Court deferred ruling on the estoppel and "insured contract" theory.

---

risks located elsewhere. Triangle; APAC-Atl., Inc. v. Prot. Serv., Inc., 397
F.Supp.2d 792 (2005).

[9] Mulvey also downplayed conflicts of laws, asserting: "the law of Virginia and
West Virginia is not materially different regarding the two primary issues before
this Court." (Docket No. 74). Appellants now assert that the law of Virginia is so
completely different that it is repugnant to West Virginia public policy. Brief, 22.

[10] Mulvey's attempt to cabin the choice-of-law analysis to the issue of additional
insured coverage stumbles on the fact that the Mulvey/DCI Subcontract dictates
application of New York law. JA043.

Appellants filed a "Motion to Alter or Amend the Judgment," essentially requesting reconsideration.  JA398.  Appellants argued that the insurance contract had been formed in West Virginia, but only because DCI's "principal place of business" is West Virginia.  JA399.  They relied upon a June 2007 deposition of Robert Deeb, then President of DCI, taken in Mulvey's arbitration against DCI. JA405-406.[11]   Therein, the witness <u>did</u> <u>not</u> <u>testify</u> about the location of DCI's "principal place of business;" simply that his "Business address would be this location that we're in."   He did not describe that as DCI's principal place of business; rather, the <u>cover</u> <u>page</u> of the transcript stated that the deposition was taken "…at the corporate offices of DCI/Shires, Inc., 2980 Big Laurel Highway, Bluefield, West Virginia…."[12]   The witness did not testify as to whether DCI had any other "corporate offices," nor how long DCI had maintained that office, nor what locations DCI had in May of 2002, when the Bituminous policy was applied for and issued.[13]

---

[11] Bituminous was not a party to the arbitration, therefore, Bituminous' counsel was not in attendance at the deposition.

[12] Attributing evidentiary value to the <u>cover</u> <u>page</u> of a deposition transcript is inappropriate, at best.

[13] The Bluefield, West Virginia location, where the deposition was taken in 2007, was nowhere mentioned in the Application, nor in the Bituminous policy.  JA414-423.

In that motion, as on appeal, Appellants contend that "documents in Bituminous' underwriting file indicate that Bituminous was aware that DCI's principal place of business was West Virginia." JA399. Appellants attached a few pages from the underwriting file produced in discovery, including an email dated in April 2003, <u>nearly a year after the issuance of the subject policy</u>, JA408, and an "Underwriting Information Page" dated May 14, 2001, which plainly relates to a prior policy covering the period from May 20, 2001 to May 20, 2002. JA409. These documents relate neither to the subject policy, nor where it was issued.

The District Court could have properly denied the motion because the "exceptional circumstances" typically warranting reconsideration were absent.[14]

By Order dated October 19, 2010, the District Court permitted further briefing on the impact of <u>N. Am. Precast, Inc. v. General Cas. of Wis.</u>, 2008 U.S. Dist. LEXIS 26844 (S.D.W.Va. 2008) and <u>Joy Tech., Inc. v. Liberty Mut. Ins. Co.</u>, 421 S.E.2d 493 (W.Va. 1992). JA505-506. Appellants filed a "Motion in Response" to that Order. JA526-535. They disavowed their prior admission that Virginia was the state of contract formation, and argued that, although the state of

---

[14] <u>Smith v. Bonds</u>, 813 F.2d 1299, 1303 (4th Cir. 1987); <u>Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998); The Court could have denied the motion, as well, because, "Rule 59(e) motions must not be used…to raise arguments which could have been raised prior to the issuance of the judgment.…" <u>Pac. Ins. Co.</u>, *supra*.

issuance of the policy "does not matter," nonetheless, "this policy was issued in West Virginia." JA530. They also first raised a public policy basis for opposing application of Virginia law, arguing that applying Virginia law would offend "West Virginia's strong public policy of quickly determining which insurance is primary" and a related policy favoring "resolution of disputes by contracts of compromise and settlement rather than litigation…." JA531-532. No other public policy ground was offered in that motion.

Characterizing those arguments as "squarely at odds" with Appellants' prior position, by Order dated January 18, 2011 the District Court directed that "Plaintiffs…make a proffer of the evidence they have to support this assertion. Specifically,…how the 'last event [ ] necessary to make a binding agreement' occurred in West Virginia." (emphasis in the original).[15] JA536-537. In response, Appellants proffered no evidence, but filed a "Brief" (Docket No. 152),[16] stating "[t]hese plaintiffs have no other evidence to offer on this point." Otherwise, the

---

[15] The Order cited Tow v. Miners Mem'l Hosp. Ass'n, Inc., 305 F.2d 73 (4th Cir. 1962), which interprets older West Virginia cases to mandate that a contract is deemed to have been made in the state where "the last event occurred necessary to make a binding agreement," and, as such, that state's law controls the nature, validity and interpretation of the contract, but where the contract is to be performed in whole or in part in another state, that state's law controls issues relating to "the performance of the contract…." Id., citing Boyd v. Pancake Realty Co., 46 S.E.2d 633 (W.Va. 1948).

[16] That "Brief" is not contained in the Joint Appendix.

"Brief" vaguely referenced an entirely gratuitous and irrelevant submission made by DCI, JA538-543,[17] but did not detail what DCI's submission showed.

At a conference on February 16, 2011, the District Court reaffirmed the ruling that Virginia law applied to this case. JA559. At that same conference, the District Court dismissed DCI on jurisdictional grounds and addressed B&B's October 15, 2010, Motion for Leave to Amend its Answer to assert a statute of limitations defense. JA500. When the District Court observed that Appellants had never responded to the motion, counsel for Appellants then voiced verbal opposition.

On March 30, 2011, the District Court entered several orders. The District Court granted B&B's Motion for Leave to Amend. The District Court also granted summary judgment in favor of B&B on Appellants' claims, holding *inter alia*, that the third-party beneficiary contract claim was barred by the Virginia statute of limitations. JA601-610.[18]

_____

[17] The Order was quite explicit in directing "Plaintiffs" to make the proffer.

[18] Plaintiffs had alleged five claims against B&B: Count I - declaratory judgment seeking a coverage determination, Count III – estoppel to deny coverage, Count IV - detrimental reliance based on representations of coverage, Count V - third-party beneficiary and Count VI - professional negligence. The District Court dismissed Count I, III and IV finding that as an insurance agency B&B is not a party to the insurance contract and has no authority to make coverage decisions. The Court dismissed Count V on statute of limitations grounds and Count VI for lack of

On March 31, 2011, the District Court addressed Bituminous' Motion for Summary Judgment. Applying Virginia law, the District Court concluded that Appellants' estoppel theory lacked merit. Citing Norman v. Ins. Co. of N. Am., 239 S.E.2d 902 (Va. 1978), the District Court held that, under Virginia law, estoppel generally cannot extend the coverage of an insurance policy. The District Court concluded that the disclaimer in the certificate precluded the showing by clear and convincing evidence of detrimental reliance, an element necessary to invoke estoppel. JA618-628. The District Court deferred ruling on the then current version of Appellants' "insured contract" theory, and stayed the case pending a determination on the contractual issue in Mulvey's New York arbitration.[19] Finally, the District Court concluded that the record clearly reflected no bad faith on the part of Bituminous.[20]

Appellants filed an improvident appeal from the interlocutory rulings entered at that point in the case.[21] Then, despite the District Court's staying

---

privity between Plaintiffs and B&B. Plaintiffs appeal only the ruling on the third-party beneficiary claim.

[19] Mulvey had yet to show that it was entitled to indemnification under New York law.

[20] Appellants' Brief does not address the granting of judgment as to the bad faith claim. Therefore, Appellants are precluded from challenging that ruling on appeal. *See*, Zornes v. Specialty Indus., 1998 U.S.App. LEXIS 31686, n.8 (4th Cir. 1998).

[21] *See,* Rule 54(b), Fed.R.Civ.Proc. After Appellees moved to dismiss, the appeal was withdrawn.

proceedings on their "insured contract" theory so that Mulvey could establish an alleged right to contractual indemnification through the arbitration, without explanation, Mulvey dismissed the arbitration, thus precluding a determination on that issue.   JA642-645.   Notwithstanding that, Appellants moved for summary judgment on a different version of their "insured contract" theory, relying on Uniwest Constr., Inc. v. Amtech Elevator Serv., Inc., 699 S.E.2d 223 (Va. 2010), as modified, 714 S.E.2d 560 (Va. 2011), JA646-649, for the proposition that they need not actually establish a right to contract indemnification at all, Bituminous filed a Renewed Cross-Motion for Final Judgment[22] asserting that either:   (1) Appellants waived the right to pursue any "insured contract" theory by dismissing the arbitration and not having litigated the indemnification claim; or (2) Appellants' new "insured contract" argument ought not to be entertained at that late stage in the case; and (3) the "insured contract" argument in any form lacks merit under applicable Virginia law.   On March 29, 2013, the District Court entered an Order granting final judgment in favor of Bituminous.   JA698.   The District Court issued an accompanying Opinion dated April 3, 2013.   JA699-716. The District Court distinguished Uniwest on the basis that the policy in that case contained express additional insured coverage provisions, while the Bituminous

---

[22] Bituminous' Cross-Motion is not contained in the Joint Appendix.

policy contains no such provisions.  JA706-713.  The District Court also cited numerous cases holding that status as an indemnitee under an "insured contract" does not serve to extend liability insurance coverage to the indemnitee under the indemnitor's liability insurance coverages, absent policy provisions to that effect. JA714-716.[23]

This appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court was required to apply the West Virginia conflicts-of-law rules in determining which state's substantive law controls the case.  The most applicable West Virginia conflicts of laws rule is stated in Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 390 S.E.2d 562 (W.Va. 1990) as follows:

> In a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

The District Court correctly determined that the insurance policy was issued in Virginia; therefore, Virginia is the state of contract formation.  Appellants' arguments to the contrary were waived and, in any event, lack merit.  The policy was issued by and through a Virginia agent to a Virginia corporate insured.  By

---

[23] West Virginia is the lone exception.  *See,* Marlin.

statute, the policy could not have been issued in West Virginia, because it was not countersigned by a West Virginia agent. The policy was countersigned by a Virginia agent in Virginia. Appellants' argument that the contract was formed in West Virginia because the premium was paid in West Virginia lacks merit, especially since they proffered no evidence that the premium was paid in West Virginia. The assertion that the mailed copy of the insurance policy was transported to and "accepted" in West Virginia is unfounded, as is the contention that the contract was formed in West Virginia because the premium check was written and signed there. West Virginia law typically equates the place of insurance contract formation with the place of issuance of the policy, and this policy was issued in Virginia.

Appellants' argument that West Virginia has a more substantial relationship with the transaction and the parties is meritless. There are no West Virginia parties involved in this dispute; the transaction of the insurance policy occurred in Virginia; and West Virginia lacks a genuine or compelling interest in the instant dispute, which involves whether Appellants are entitled to the benefits of the Virginia policy, rather than a dispute involving a West Virginia injury claim, as Appellants contend.

Nothing about the application of Virginia law offends any West Virginia public policy. Mere differences in applicable law are not sufficient to invoke a public policy argument for the application of West Virginia law. In short, the District Court correctly determined that Virginia law controls the case.

Under Virginia law, courts must enforce insurance policies as written. The coverage provided by the policy cannot be extended by concepts such as estoppel. Moreover, statements in a certificate do not operate to modify or enlarge the coverage of the policy. Virginia has never embraced the view that a representation in a certificate to the effect that a certificate holder is an additional insured is sufficient to alter the coverage of a liability policy. The District Court correctly found that Virginia would follow the majority rule, which holds that a representation contained in a certificate provides no basis to extend additional insured coverage not otherwise provided in the policy. Given the clear, conspicuous disclaimers contained in the certificate, the District Court correctly determined that Appellants could not establish the key element of reasonable reliance on the alleged misrepresentation by the clear and convincing evidence required under Virginia law. The estoppel theory was properly rejected.

The District Court properly exercised its discretion in granting B&B leave to amend its Answer to assert a statute of limitations defense. There was no prejudice

to Mulvey and no circumstances that manifest an abuse of discretion sufficient to overturn that ruling.

The District Court also correctly applied the Virginia statute of limitations to Appellants' contractual third-party beneficiary claim asserted against B&B.

Appellants assert that DCI's request that Mulvey be added to its policy as an additional insured constitutes a contract between DCI and B&B, that Mulvey was an intended third-party beneficiary, and that the contract was breached. Assuming that this request constituted a contract, it was an oral contract, as the District Court correctly found. The District Court further correctly determined the asserted breach -- B&B's alleged failure to procure additional insurance coverage -- occurred in Virginia where B&B is located. Accordingly, West Virginia's borrowing statue, requires application of Virginia's shorter statutory limitations period for oral contracts, which bars Appellants' claim.

Appellants' attempt to rely on West Virginia's "discovery rule" is also misplaced. First, as Virginia's statute of limitations governs, so do its corresponding rules which specifically provide that a cause of action accrues when the breach occurs, not when it is discovered. West Virginia's "discovery rule" is also inapplicable because Appellants knew or should have known the facts necessary to understand the basis for their purported claim at the time of accrual.

Accordingly, the District Court correctly determined that under Virginia's three-year period of limitations, Appellants' third-party beneficiary claim was long since time-barred.

## **ARGUMENT**

### **I. Standard Of Review**

The District Court's choice of Virginia law represents a legal determination, which is necessarily founded upon underlying factual determinations, namely that the policy issued and the contract was made in Virginia. Legal determinations are reviewed *de novo*, Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 928 (4th Cir. 1995), but the findings of fact upon which those determinations rest should be reviewed for "clear error". Young v. FDIC, 103 F.3d 1180, 1191 (4th Cir. 1997), *citing* Mylan Labs., Inc. v. Akzo, 2 F.3d 56, 60 (4th Cir. 1993); Bowman v. Curt G. Joa, Inc., 361 F.2d 706, 717 (4th Cir. 1966).[24]

The application of Virginia's three-year statute of limitations to time bar the contractual claim is a legal determination, reviewed *de novo*. Castillo v. Emergency Med. Assocs., P.A., 372 F.3d 643, 646 (4th Cir. 2004); Jaynes v. Newport News Sch. Bd., 12 Fed.App. 166, 179 (4th Cir. 2001) (*citing* Singer v.

---

[24] The deferential standard is particularly appropriate, given the District Court's January 18, 2011, Order instructing Appellants "to make a proffer of the evidence they have to support this assertion [that the insurance policy herein 'was issued in West Virginia.'" JA536-537.

Dungan, 45 F.3d 823, 827 (4th Cir. 1995)).  Although summary judgment rulings are largely reviewed *de novo,* inferences from undisputed facts in connection therewith, are reviewed for clear error.  Maersk Line. Ltd. v. U.S., 513 F.3d 418, 421 (4th Cir. 2008) (*citing* Int'l Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco, 329 F.3d 359, 362-63 (4th Cir. 2003), *cert. denied*, 540 U.S. 1106 (2004)).

The District Court's granting leave to B&B to amend its Answer is reviewed for abuse of discretion.  Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 439 (4th Cir. 2011); Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999); Braunstein v. Pickens, 406 Fed.App. 791, 797-98 (4th Cir. 2011).

## II.  Discussion Of The Issues

### A.  Virginia Law Controls

A District Court sitting in diversity must apply the conflicts-of-law rules of the forum state.  Yost v. Travelers Ins. Co, 1999 U.S.App. LEXIS 13665 (4th Cir. 1999), *citing* Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).  West Virginia applies the conflicts-of-law rules for contracts in controversies involving insurance.  Howe v. Howe, 625 S.E.2d 716 (W.Va. 2005) ("this Court has repeatedly recognized that questions of policy *coverage* as opposed to *liability* are

governed by conflicts-of-law principles applicable to contracts."), *citing*, Nadler v. Liberty Mut. Fire Ins. Co., 424 S.E.2d 256, 261 (W.Va. 1992); Lee v. Saliga, 373 S.E.2d 345, 349 (W.Va. 1988).   West Virginia follows the basic rule of *lex loci contractus* ("the place of contracting") in contract cases.   Yost, *quoting* Johnson v. Neal, 418 S.E.2d 349 (W.Va. 1992) ("*lex loci contractus* applies absent a 'compelling reason' to deviate from it."), Neal, 418 S.E.2d at 351 *quoting* Triangle ("…the law of the state of contract formation should govern….").   In its seminal decision Triangle, the West Virginia Supreme Court embraced *lex loci contractus*, but incorporated principles of state interest analysis under the factors set forth in Restatement (Second) of Conflicts §6.  The single Syllabus point states:

> In a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

390 S.E.2d 562.

The Court specifically found that applying the law of the state of issuance of the policy promotes several of §6(2) interests, "certainty, predictability and uniformity of result," and "ease in the determination and application of the law to be applied," which the Court found "essential to the interpretation of an insurance policy…."  The Court observed that application of the law of the state of issuance

in the interpretation of the policy comports with the "reasonable expectation at the time the contracts were entered into…."[25]

The District Court determined that the insurance contract was made in Virginia, which comports with West Virginia law equating the state of formation of an insurance contract with the place of issuance of the policy. Neal, at 351 *quoting* Saliga, 373 S.E.2d at 352) ("[t]he parties reasonably expect the laws of the state where the policy issued to control rather than the laws of another state 'whose only connection to the dispute is the fortuity that the accident occurred there.'") (emphasis added). As the District Court found, under West Virginia's *lex loci contractus*, the law of the place where the contract of insurance issued controls except in unusual circumstances.[26] With one notable exception, in the past 30

---

[25] Protection of justified expectations is perhaps the most important of Restatement §6(2) factors in contracts conflicts-of-law situations. *See*, Barnes Group, Inc. v. C&C Prod., Inc., 716 F.2d 1023, 1039-1040 (4th Cir. 1983) (Murnaghan, J. concurring and dissenting in part). Reasonable expectations have also been repeatedly elevated in the West Virginia cases. Triangle; Adkins v. Sperry, 437 S.E.2d 584, 287 (W.Va. 1993). ("Our adoption of this Restatement (Second) of Conflicts rule…was derived…and motivated in part, by the fact that if taken into account the reasonable expectations of the parties to the insurance contract.") 437 S.E.2d at 287-288. Neither DCI nor Mulvey could assert a reasonable expectation of the applicability of West Virginia law. DCI procured the insurance in Virginia, before it entered into a subcontract to perform a project in West Virginia. Mulvey insisted on including a New York choice of law provision in the Subcontract.

[26] Joy, *supra*, represents the unusual case; Joy is addressed, *infra*.

years of insurance disputes, West Virginia has uniformly applied the law of the state of issuance. *See*, n.27.

Even though the policy was applied for and issued in Virginia through a Virginia agent, by a policyholder that maintains a registered corporate "principal office" in Virginia, JA413, Appellants contend that "this policy was issued in West Virginia," and/or that the place of formation was in West Virginia, either because the copy of the policy that was mailed to DCI was transported to West Virginia and "accepted there;" or, alternatively, "because the premium check was ultimately written and signed there." Brief, 20-21.

Appellants waived these arguments. In opposing Bituminous' first motion for summary judgment, Appellants not only failed to argue that the contract was made in West Virginia, they readily conceded that the insurance contract was formed in Virginia. Only in requesting reconsideration did Appellants argue for the first time that the contract was made in West Virginia and then only because "the insurance policy was issued in West Virginia," presumably because DCI allegedly had a principal place of business there. JA530-531. They stated no grounds for reconsideration, and none were available. The District Court did not grant reconsideration. Further, Appellants never suggested, as they do now, that formation occurred where the mailed policy was transported and "accepted," or

where the insurance premium was paid or the check was written and signed. Accordingly, the arguments that Appellants now seek to assert were not <u>timely</u> asserted below, and they are waived.[27]

Next, in the face of the District Court's pointed instruction "to make a proffer of the <u>evidence</u>" to support the assertion that the policy was issued in West Virginia," JA536-537, Appellants responded diffidently, stating they had "no other evidence to offer on this point." (Docket No. 152). Moreover, they advanced no further explanation as to why the policy issued in West Virginia. Their reliance on the "Proffer" of DCI, JA538-543, did not preserve the issue. They did not even specify what exactly they were relying on, nor what the proffer meant.[28] Appellants' response, plainly not what the District Court instructed, is insufficient to preserve the issue for appeal. *See*, <u>Mylan Labs.</u>, *supra.* n.2, *quoting* <u>Hormel v.</u>

---

[27] The District Court did not enter an order denying the so-called Motion to Alter or Amend, but the District Court did expressly decline to "reconsider." The District Court did not consider whether "exceptional circumstances" existed to warrant the "extraordinary remedy" of reconsideration. *See*, <u>Bailes v. Erie Ins. Prop. & Cas. Co.</u>, 2010 U.S. Dist. LEXIS 11328 (S.D.W.Va. 2010); <u>Bonds</u>; <u>Pac. Ins.</u> But, this Court may affirm on any ground, even though different than that relied upon below. <u>Lowe v. Sporicidin Int'l</u>, 47 F.3d 124, 131 n.6 (4th Cir. 1995); <u>Young</u>.

[28] DCI's referenced "Proffer" contains no argument; it merely attaches affidavits, which do not mention insurance premium payments. That subject appears in a different affidavit attached to DCI's "Additional Proffer," JA544-547. Appellants have never relied upon the "Additional Proffer," nor heretofore mentioned the insurance premium.

Helvering, 312 U.S. 552, 556 (1941) ("ordinarily an appellate court does not consider issues not raised below….").

Appellants' argument that "this insurance policy was issued in West Virginia" is meritless. The District Court's finding that the contract was formed in Virginia may not be reversed on appeal unless clearly erroneous. Further, from a statutory standpoint, this policy could not issue in West Virginia. In West Virginia, a policy must be "signed or countersigned in writing by a licensed *resident* agent of the insurer…." W.Va. Code §33-12-11 (2004). This policy was not countersigned by a resident West Virginia agent; it was countersigned by a Virginia agent. The West Virginia Supreme Court of Appeals has specifically held that where there is a requirement that the policy "shall not be valid until countersigned by the duly authorized agent of the company" at a particular place, and the policy is countersigned there, the policy "is a contract of the State where so countersigned." S.M. Smith Ins. Agency v. Hamilton Fire Ins. Co., 71 S.E. 194 (W.Va. 1911). Appellants' arguments to the contrary are meritless. B&B's mailing of a copy of the policy under cover letter dated October 1, 2002, JA046, five months after inception of the coverage, is inconsequential to the place of formation. Appellants' argument that the premium check was written and signed

{L0540241.1 }                              24

in West Virginia, has even less merit.[29, 30]  Appellants cite <u>Parsley v. GMAC</u>, 280 S.E.2d 703, 707 (W.Va. 1981), for the proposition that "the last act of contract formation is the payment of a premium, which is a necessary consideration." Brief, 21.  At the outset, if one accepts this premise, the significant contact would be the state where the premium check was <u>tendered</u> <u>in</u> <u>payment</u>, not the place where the check was written and signed.    Moreover, Appellants offered no argument and proffered no evidence below about where the premium was paid.[31] That argument, too, was waived.   In any event, however, it cannot support a reversal of the judgment.

---

[29] As stated, for conflicts-of-law purposes, West Virginia law equates the place of contract formation with the place of issuance of the insurance policy.  <u>Neal</u>, *supra.* This comports with the traditional contracts concepts that the place of contracting is the "place where occurred the last act necessary…to give the contract binding effect."  Restatement (Second) of Conflicts of Laws §188, Comment e.  In the case of commercial liability insurance policies, the policy coverage is normally effective when the insurer issues the policy, and issuance is normally manifested by a communication to the agent.  No West Virginia case has ever chosen the law of the state where the insured wrote and signed a premium check.

[30] Elsewhere, they characterize "[t]he paramount issue…[as] which insurance policy is primary…."  Brief, 5, 22.

[31] DCI similarly offered nothing about the place or manner of payment.  The policy contains a "Premium Payment Schedule," JA083, that indicates that the total premium payment for the policy was to be made in eight periodic installments. Language in the schedule suggests that payments could be made either to "your agent" or "us [Bituminous]."  In either case, the premium checks were mailed or otherwise delivered in Virginia or in some state other than West Virginia.

Parsley fails to support Appellants' contention.  Parsley involved the non-renewal of a motor vehicle policy, where billing statements sent to the policyholder prior to the date of expiration specified that the premium would have to be paid prior to that date in order for the coverage to continue.  No premium was paid, and the policy was held to have expired.  Parsley does not inform the instant inquiry.

Contrary to Appellants' contention that payment of premium is a "necessary consideration," under this policy, coverage became effective at inception on May 20, 2002, subject to cancellation for non-payment of premium.  *See,* JA091, ¶2.a. ("We may cancel this policy…for nonpayment of premium.").[32]  The District Court's determination that the policy of insurance was formed in Virginia must be affirmed.

Appellants attempt to unseat Virginia law on the basis that West Virginia enjoys a "more significant relationship to the parties and the transaction," Brief, 9, thus invoking state interest analysis under Restatement §6.  They now present a vastly different interest analysis than they did in their response to Bituminous'

---

[32] Most of the cases cited by Appellants in their Brief, Nationwide Mut. Ins. Co. v. Smith, 172 S.E.2d 708 (W.Va. 1970), Hare v. Conn. Mut. Life Ins. Co., 173 S.E. 772 (W.Va. 1934), and Rominick v. Inter-Ocean Cas. Co., 169 S.E. 446 (W.Va. 1933), deal with the cancellation or lapse of an existing policy for non-payment of premium.  The other case, Adkins v. W. & S. Indem. Co., 186 S.E. 302 (W.Va. 1936) is entirely distinguishable.  That case dealt with the lack of authority of a Board of Education to disburse funds to pay an insurance premium.

motion for summary judgment below.   There, they characterized the dispute as limited to the issue of additional insured coverage, as required under the Subcontract.   Since then, Appellants have realized that defining the issue that way undermines their argument for a paramount West Virginia interest, given the contractual choice of New York law in the Subcontract.   In their Brief on appeal, they (sometimes) characterize the dispute as involving "expenditures for a personal injury claim to a person in West Virginia."   Brief, 14.   This Court does not entertain arguments that were not first presented to the District Court.   <u>Mylan Labs.</u> Nevertheless, Appellants' current analysis suffers more substantive flaws, starting with reliance on inapposite cases.   Appellants mistakenly assert that "the seminal case is <u>Joy Technologies v. Liberty Mutual.</u>"   Brief, 10.   Rather, the "seminal" case is <u>Triangle</u>.   <u>Joy</u> represents a unique problem that warranted an exceptional departure from the traditional *lex loci contractus* approach.   The Court observed that the insurer's "studied, affirmative and official communications [with the West Virginia Insurance Commission were different from the] meaning and effect…attributed to it by the State of Pennsylvania," whose law the insurer should apply.   <u>Joy</u> at 497.   In those unique circumstances "…in spite of the general policy of the law favoring application of the law of a state where a contract is formed, the Court, in line with the overall holding in the syllabus of…<u>Triangle</u>,…, believes that

the law of West Virginia, rather than the law of Pennsylvania, should govern the resolution of the questions involved in the present case." 421 S.E.2d at 497.

The West Virginia Supreme Court of Appeals has characterized Joy as a unique case, in which "public policy played a part…," further explaining "[we] held that because the insurer, in seeking approval of the exclusionary clause, had misrepresented to state officials the meaning and effect of the clause, enforcement of the contract under Pennsylvania law would be contrary to '[t]he public policy of the State of West Virginia….'" Nadler, 424 S.E.2d at 265. The attempt to apply Joy here is unfounded.[33]

Appellants' reliance on N. Am. Precast, is similarly misplaced. In contrast to the extensive West Virginia contacts in that case, here Mulvey is a New York corporation, the subcontract that contains the additional insured requirement is a New York contract, and the certificates were issued to Mulvey in New York. Most importantly, Mulvey, was not added as an additional insured, and Bituminous did

---

[33] The Joy Court cited Gilbert Spruance Co. v. Pa. Mfr. Ass'n Ins. Co., 603 A.2d 61 (N.J.Super. 1992). Joy, Gilbert, and other similar conflicts-of-law decisions in environmental cases may be in disharmony with the typical conflicts of law analysis for underlying practical and policy reasons. NL Indus., Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 322 (3d Cir. 1995).

not contract to provide coverage for this project, which happened to be in West Virginia. Bituminous only issued a Virginia policy to a Virginia insured.[34]

Appellants unfairly fault the District Court for focusing its interest analysis on "the particular contract," contending the analysis must focus on the "coverage dispute," which they mischaracterize as a dispute over "expenditures for a personal injury claim to a person in West Virginia." Brief, 14. The analysis must be applied to the relevant contract, focusing on the issue arising thereunder. Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 674 F.Supp. 1334 (D.D.C. 1987), cited in Triangle, explains that, under the rules embodied in Restatement §188, controlling state law must be selected separately for each particular issue, because contacts and factors that are important in the analysis may not necessarily be the same for each issue. The text and comments to §188 explain this concept. Section 188(2) lists a series of five potentially significant contacts that may identify potentially interested state jurisdictions, and clarifies: "These contacts are to be evaluated according to their relative importance with respect to the particular

---

[34] The District Court in this case properly found Energy Corp. of Am., rejecting application of West Virginia law, to be analogous hereunder in contrast to N. Am. Precast.

issue." The comments amplify that the analysis must begin with an identification of the particular contract issue involved. Comments d, e.[35]

Appellants' thinly veiled effort to embellish the importance of the West Virginia contacts fails.[36] This dispute has little or nothing to do with "expenditures for a…person in West Virginia;" rather, the issue here is whether Appellants are entitled to enjoy the benefits of the Bituminous policy. As such, only two state jurisdictions have an interest -- New York, where Mulvey is domiciled and the state whose law governs the Subcontract; and Virginia, the state where the contract of insurance was issued. As the state where the accident unfortuitously occurred, West Virginia's relationship is insubstantial.[37] *See,* Nadler; Triangle.

Appellants' argument that application of Virginia law violates West Virginia public policy is ill-founded. Moreover, it was not timely asserted below.

---

[35] In this respect, state interest analysis under the Restatement is not dissimilar to the ancient West Virginia contracts choice-of-law rules, recognized in Tow. *See*, n.16, *supra.*

[36] The "West Virginia person" (or, more aptly, the estate) has already been compensated. No West Virginian has any stake in the present controversy. This is a blatant attempt to conjure up what courts and commentators have described as a "false conflict." Barnes. A false conflict exists when one or more of the potentially interested jurisdictions as defined by the contacts listed in Restatement §188(2) actually has no particular interest in applying its own local law to the specific issue in controversy.

[37] As this Court, and the West Virginia Supreme Court of Appeals have repeatedly reiterated, questions involving insurance policies are governed by the contracts rule, not tort conflicts of laws principles. *See*, Yost; Howe.

Appellants' Response opposing Bituminous' motion for summary judgment advanced no public policy argument at all.  Public policy first surfaced in Appellants' brief in support of their so-called Motion to Alter or Amend.[38]  For reasons stated above, this Court may properly deem the public policy argument as waived.

Nevertheless, Appellants' arguments fail on the merits.  Appellants argue four distinct aspects of West Virginia public policy, requiring application of West Virginia law:  (1) "quickly deciding which insurance is primary;" (2) encouraging resolution of controversies by contracts of compromise; (3) a "strong public policy in regulating insurance practices" and "how people in West Virginia are treated;" and (4) favoring contracts of indemnity.  Brief, 22-24.  Only the first two were ever argued below; the others are argued for the first time on appeal, and should not be considered.  Mylan Labs.

Nonetheless, whether waived or not, Appellants' public policy arguments are unavailing.  In Yost, this Court recognized that, in West Virginia:  "This [public policy] exception is necessarily a narrow one, to be invoked only in extraordinary circumstances."  Yost at 16.  In Nadler, the West Virginia Supreme Court stated:

---

[38] The Court succinctly stated "[t]he court does not find (nor do plaintiffs argue) that the law of Virginia is contrary to the public policy of West Virginia."  JA392.

> We adhere to the general principle that a court should not refuse to apply foreign law, in otherwise proper circumstances, on public policy grounds unless the foreign law 'is contrary to pure morals or abstract justice, or unless enforcement would be of evil example and harmful to its own people.' 16 Am. Jur. (2d) Conflict of Laws §18

424 S.E.2d at 265. Nadler also explains that application of another state's law ordinarily cannot be premised merely on the fact that the "substantive law of the other state differs from our own…" Id. In Howe, the Court admonished: "This Court does not take a request to invoke our public policy to avoid application of otherwise foreign law lightly." Howe, 625 S.E.2d at 646. Finally, in Neal, the West Virginia Supreme Court declined "to stretch West Virginia's public policy" to avoid application of Virginia law to an insurance policy issued in that state. 418 S.E.2d at 352.[39]

Appellants cite no authority for the proposition that West Virginia adheres to a "strong public policy goal of quickly determining which insurance is primary." Brief, 22. Further, how such a public policy would be violated by application of Virginia law is unclear. Appellants suggest that Bituminous has "espoused" an argument that:

---

[39] Indeed, there is only one instance where the West Virginia Supreme Court has invoked public policy to avoid applying the law of a foreign state to a liability insurance policy: Joy. That Court itself has explained "the public policy issue did not arise from the conflict between the substantive law of Pennsylvania and West Virginia, but rather from the wrongdoing of the insurer." Nadler, 424 S.E.2d at 265. Plainly, there is no wrongdoing here.

Plaintiffs must first establish that indemnity is owed and thus, there must be a separate trial on liability among the parties even though the underlying wrongful death (sic) has settled five (5) years ago. At this trial a jury must apportion liability according to whether there was joint liability in regard to the underlying wrongful death or whether there is sole liability of McDonald's and Mulvey in regard to the cause of the underlying wrongful death.

Brief, 23. Appellants then cite Uniwest stating "[i]n the event this [Uniwest] represents Virginia's approach, such an approach does not foster settlement and only protracts litigation." They conclude: "It [(Uniwest)] might meet Virginia's public policy of encouraging settlements, but it certainly would not meet West Virginia's public policy of encouraging settlements, which is well established through West Virginia's precedent, statutes, and regulations concerning insurance claim settlement practices." Id.[40]

This assault on Uniwest is ironic and misdirected.[41] Far from an impairment of any public policy, Uniwest involves a straightforward application of additional insured provisions in an insurance policy. Application of Virginia law simply means that in order for Appellants to enjoy rights or benefits under its policy, they

---

[40] Contrary to Appellants' misassertions, there was no need for any separate trial on liability, nor any apportionment of liability, nor any other type of proceeding. All they had to do was proceed with and prevail in the contractual arbitration proceeding in New York.

[41] Below, Appellants construed Uniwest completely differently, and made it the centerpiece of their last "insured contract" theory (Docket No. 181). They also rely on a different construction of Uniwest on appeal. Brief, 46.

have to demonstrate that they are insureds thereunder -- and they clearly have not. Further, as fully explained by the District Court, the effect of Mulvey's alleged entitlement to contractual indemnification, even assuming it is under an "insured contract," is that DCI might be entitled to liability coverage for any contractual indemnification liability. To the extent that this differs from the result under West Virginia law, that disparity is insufficient to invoke public policy. <u>Nadler</u>.

Finally, West Virginia adheres to a firm policy of encouraging the resolution of controversies by settlement and compromise. <u>State ex rel. Vapor Corp. v. Narick</u>, 320 S.E.2d 345 (W.Va. 1984). Virginia adheres to the same policy. <u>7-Eleven, Inc. v. De'pt. of Envtl. Quality, Inc.</u>, 590 S.E.2d 84, 89 (Va.App. 2003). Appellants simply present no logical argument that application of Virginia law offends that salutary policy.

### B.  <u>Estoppel Cannot Extend Coverage Of The Bituminous Policy</u>

Estoppel is advanced in this case to modify or extend the coverage of the policy; specifically, to extend coverage to an entity not otherwise insured. The alleged estoppel is predicated solely and completely upon B&B issuing a

certificate of insurance.[42]  Virginia law will not support the estoppel theory in this case.

In Virginia, "an insurance policy is a contract to be construed in accordance with the principles applicable to all contracts." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 636 (4th Cir. 2005); Seals v. Erie Ins. Exch., 674 S.E.2d 860 (Va. 2009).  A court is required to enforce the policy as written. TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 57 S.E.2d 199, 200 (Va. 2002).  In view of these generally applicable contract principles, it is noteworthy that the policy contains a very specific provision setting forth "Who Is An Insured," JA111, and a distinct "Changes" provision which states that "This policy's coverage can be…only by endorsement issued by us…." JA091.[43]

---

[42] Appellants' estoppel argument starts with the premise that B&B is an "agent," whose acts are imputable to Bituminous.  Brief, 27-28.  They rely on Va. Code Ann. §38.2-1802 "[a] licensed agent shall be held to be the agent of the insurer that issued the insurance…in any controversy between the insured…and the insurer…." There are several problems with this reasoning, including that Appellants are not "the insured" and Bituminous is not their insurer.  Bituminous also questions whether B&B is an "agent."  In all likelihood, B&B is actually a "broker" rather than an "agent."  Appleman explains:  "Agents generally serve a single insurer.  In contrast, brokers generally are independent contractors who have relationships with more than on insurance company." See, New Appleman on Insurance Law (Library Ed.) §2.2.

[43] Importantly, if request had been made to Bituminous to issue an endorsement, the form of additional insured coverage endorsement that Bituminous offered in 2002 would not provide coverage for the wrongful death claim.  JA317.  The coverage is limited to the policyholder's "ongoing operations for additional

The Virginia Supreme Court has never invoked estoppel to extend additional insured coverage to a party not named as an additional insured under an insurance contract. Virginia follows the well-established rule that the doctrine of estoppel may not be used to extend insurance coverage beyond the express terms of the insurance contract. Blue Cross & Blue Shield of Va. v. Wingfield, 391 S.E.2d 73, 74-75 (Va. 1990) (citing Sharp v. Richmond Life Ins. Co., 183 S.E.2d 132, 135 (Va. 1971)) ("the general rule in Virginia is that the coverage of an insurance contract may not be extended by estoppel or implied waiver to include *risks* not covered by its terms"); Norman, *supra.*

Appellants attack the District Court's citation of Norman on the basis that the case does not involve "additional insured status, or certificates of insurance." Brief, 31. They do not cite any Virginia authority addressing that subject. Norman cites numerous authorities supporting the modern Virginia view, and the overwhelming majority view that, while doctrines like estoppel may be interposed to preclude an insurer from asserting a forfeiture or from relying upon a breach of a

---

insured." DCI was not engaged in "ongoing operations" when the fatality occurred. DCI had completed its work and the McDonald's had opened by October 2002. JA231. The fatality occurred on January 3, 2003. *See,* Weitz Co. v. Mid-Century Ins. Co., 181 P.3d 309 (Colo.App. 2007); MACTEC Eng'g & Consulting, Inc. v One Beacon Ins. Co., 2007 WL 2300706 (2007); Hartford Ins. v. Ohio Cas. Ins. Co., 189 P.3d 195, 201-02 (Wash.App. 2008); Pardee Constr. Co. v. Ins. Co. of the West, 92 Cal.Rptr.2d 443, 446 (Cal.App. 2000).

condition or some other technical requirement contained in a policy, such doctrines will not suffice to create coverage which does not otherwise exist under the policy. Norman, (*quoting* Ins. Co. of N. Am. v. Atl. Nat'l Ins. Co., 329 F.2d 769 (4th Cir. 1963)) ("[t]here is a definite distinction between the waiver of a right to declare a forfeiture, to cancel or rescind based upon some breach of a condition of the policy on the one hand and the extension of coverage provided by the policy on the other."); 29A Am. Jur. "Insurance" §1135 (1960) ("The rule is well established that the doctrines of waiver and of estoppel, based on the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms…while an insurer may be estopped by its conduct or by its knowledge from insisting upon a forfeiture of a policy, the coverage cannot be extended by the doctrines of waiver or estoppel."). The Norman Court also cited Sharp, which cites with approval the general rule stated in 1 A.L.R.3d 1139 that the concepts of waiver and estoppel "…are not available to broaden the coverage of a policy…." 183 S.E.2d at 135. Appellants' attempt to diminish the controlling effect of Norman is unavailing.[44]

---

[44] The cases Va. Auto. Mut. Ins. Co. v. Brillhart, 46 S.E.2d 377 (Va. 1948) and State Farm Fire Ins. Co. v. Rakes, 49 S.E.2d 265 (Va. 1948), cited by Appellants, largely stand for the proposition that estoppel through acts of an authorized agent may effectively preclude an insurer from asserting a forfeiture or a condition or limitation provision in the policy. Those cases do not suggest that coverage may

Under Virginia law, and the vast majority of jurisdictions across the country, representations in a certificate are ineffective when in conflict with the terms of a policy. Although not expressly dealing with estoppel, that is the clear and unmistakable holding of the Virginia Supreme Court in <u>Shenandoah Life Ins. Co. v. French</u>, 373 S.E.2d 718 (Va. 1988). Based on disclaimers considerably less dramatic than appear in the certificate here, the Court premised that holding on language in the certificate stating that it was subject to the terms of the policy.

<u>Shenandoah</u> is fully in accord with the overwhelming majority view. *See* <u>New Appleman on Insurance Law</u> (Library Ed.) §3.03[A]. *See, e.g.,* <u>Ala. Elec. Coop., Inc. v. Bailey's Constr. Co., Inc.</u>, 950 So.2d 280 (Ala. 2006); <u>Ann Taylor, Inc. v. Heritage Ins. Serv. Inc.</u>, 259 S.W.3d 494 (Ky.App. 2008); <u>Tribeca Broadway Assoc., LLC v. Mount Vernon Fire Ins. Co.</u>, 774 N.Y.S.2d 11 (N.Y.App. 2004); <u>Via Net v. TIG Ins. Co.</u>, 211 S.W.3d 310 (Tex. 2006); <u>Commw. v. Gall</u>, 789 N.E.2d 586 (Mass.App. 2003); <u>G.E. Tignall & Co., Inc. v. Reliance Nat'l Ins. Co.</u>, 102 F.Supp.2d 300 (D.Md. 2000); <u>Postlewait Constr., Inc. v. Great Am. Ins. Co.</u>, 720 P.2d 805 (Wash. 1986). Courts and commentators have repeatedly made clear that those who take certificates at face value do so at their

---

be created or extended through estoppel, <u>2 Couch Cyclopedia of Insurance Law</u> §540 at 1659-1661, nor that estoppel can be used to add additional insureds to a policy that does not afford additional insured coverage.

own risk; that they "are informational documents only," and that they do not confer coverage, which, according to Appleman, "should be apparent from their face." §3.03 A[2] at 3-44.4. In short, certificates do not amend, extend, or alter terms of the policy. Appleman at 3-44.5; 3-44.7 ("As a rule, a certificate cannot create coverage where none exists…nor do they effectuate an estoppel.")[45] *See,* TIG Ins. Co. v. Sedgwick James of Wash., 184 F.Supp.2d 591 (S.D.Tex. 2001); Pekin Ins. Co. v. Am. Country Ins. Co., 572 N.E.2d 1112 (Ill.App. 1991).

Appellants cite no Virginia case that applies estoppel to expand or extend substantive coverage of a policy because of the content of a certificate. Instead, they cite Hitt v. Cox, 737 F.2d 421 (4th Cir. 1984), which fails to support their estoppel theory. In Hitt, the insurer's agent mistakenly advised a County Board of Supervisors that it had duplicate coverage for the county jail under two policies when the coverage existed under only one. In reliance, the County acquiesced in the deletion of coverage under the policy that actually afforded it. After a fire damaged the jail, it was revealed that there was no coverage under either policy.

---

[45] Appleman addresses certificates containing virtually identical language to the certificates in this case:

> **THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.**

Rejecting estoppel (because the necessary elements of estoppel were not met), the Court found that deletion of coverage was voidable under the contract doctrine of mutual mistake, which has not been asserted here. <u>Hitt</u> is also distinguishable because of the explicit disclaimers present here on the certificate.

Despite the complete lack of supporting Virginia authority, Appellants assert in their Brief: "While estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract, an insurer may be estopped from denying that an individual is an *additional insured* when the insurer's agent issues a certificate of insurance to that person indicating that they *are* an additional insured." Brief, 31. For that proposition, Appellants mistakenly assert that <u>Marlin</u>, a West Virginia decision, "is not at odds with the Supreme Court of Virginia's holding in <u>Norman</u>." <u>Id</u>. at 33. To the contrary, <u>Marlin</u> is squarely in conflict with <u>Norman</u> and <u>Shenandoah</u>. Further, the reasoning of <u>Marlin</u> represents a decidedly minority view. The leading commentator on insurance law severely criticizes <u>Marlin</u> because the Court failed to "address the reasonable reliance issue head on" and observes that "its failure to do so lessens the opinion's persuasive value." <u>Appleman</u> §3.03A[3][b] at 3-44.10. <u>Appleman</u> states: "Although other courts have invoked estoppel to find coverage based on certificates of insurance, this approach does not reflect a majority rule." As <u>Appleman</u> points out, most of the

courts to have considered this issue hold that the issuance of a certificate containing a misrepresentation that a party is an additional insured does not serve to extend coverage to that party. <u>True Oil Co. v. Mid-Continent Cas. Co.</u>, 173 Fed.Appx. 645 (10th Cir. 2006); <u>T.H.E. Ins. Co. v. City of Alton</u>, 227 F.3d 802, 806 (7th Cir. 2000); <u>Mountain Fuel Supply v. Reliance Ins. Co.</u>, 933 F.2d 882, 889 (10th Cir. 1991); <u>TIG</u>; <u>G.E. Tignall</u>; <u>Ala. Elec.</u>; <u>Pekin</u>.

Appellants' attempt to distinguish these cases is facetious at best. For example, they assert that, in <u>TIG</u> "the insurance policy did not make any provision for additional insured coverage," whereas here "the Bitumionous poicy did provide for additional insureds, but Mulvey was mistakenly never added." Brief, 38. The section of the Bituminous policy which they reference, JA119, is an endorsement form which extends "Additional Insured" coverage to "Lessors of Leased Equipment." Mulvey does not claim to have been a lessor of equipment and the suggestion that Mulvey was "mistakenly never added" to that endorsement is shameful. What the endorsement does show, if anything, is that the proper way <u>to add</u> additional insureds is through appropriate endorsement, not through after-the-fact artifices like waiver or estoppel.

Furthermore, as the District Court determined, Appellants cannot establish even a genuine issue of material fact regarding the elements of an estoppel. The District Court relied on the following statement of Virginia law:

> A party seeking to invoke the doctrine of estoppel must provide by clear, precise, and unequivocal evidence the following elements: (1) a material fact was falsely represented or concealed; (2) the representation or concealment was made with knowledge of the facts; (3) the party to whom the representation was made was ignorant of the truth of the matter; (4) the representation was with the intention that the other party should act upon it; (5) the other party was induced to act upon it; and (6) the party claiming estoppel was misled to his injury. Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc., 266 S.E.2d 887 at 890 (Va. 1980). (Emphasis added).

JA624.[46]    Given the conspicuous disclaimers contained in the certificates, the District Court concluded that "Plaintiffs cannot show reasonable reliance" by the necessary clear and convincing evidence. JA628.[47]    This conclusion is in harmony

---

[46] As Appellants concede, "[t]he burden 'rests upon the party relying on the doctrine of estoppel to prove each element by clear, precise and unequivocal evidence.'" Pa. Cas. Co. v. Chris Simopoulos, M.D., Ltd., 369 S.E.2d 166, 169 (Va. 1988) (quoting John Hancock Mut. v. Va. Nat. Bank, 181 S.E.2d 618, 620 (Va. 1971)). Brief, 27, (quoting Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust, 413 S.E.2d 599 at 603 (Va. 1992)). The heightened burden of proof is applicable in this diversity case, see, e.g. Kirschner v. Broadhead, 671 F.2d 1034 (7th Cir. 1982); Hendrix v. EvenFlo Co., Inc., 609 F.3d 1183 (11th Cir. 2010); Wright & Miller, Fed. Prac. & Pro., §4512. Where "as here, the non-moving party must produce clear and convincing evidence to support its claim, that higher evidentiary burden is considered part of the summary judgment calculus."; Wells v. Liddy, 186 F.3d 505, 520 (4th Cir. 1999).

[47] The cornerstone of a claim for equitable estoppel is reasonable reliance upon the misrepresentation of another. Harris v. Criterion Ins. Co., 281 S.E.2d 878, 881

with the overwhelming majority view as recognized in <u>Appleman</u>, §30.03A[2][3][6], 3-44-10 (collecting cases). <u>Am. Hardware Mut. Ins. Co. v. BIM, Inc.</u>, 885 F.2d 132, 139-40 (4th Cir. 1989); <u>City of Alton</u>; <u>Johnson v. United Excel Corp.</u>, 2009 WL 248113, 9-10 (Kan.App. 2009); <u>Am. Country Ins. Co. v. Kramer Bros., Inc.</u>, 699 N.E.2d 1056, 1060 (Ill.App. 1998); <u>W. Am. Ins. Co. v. Meridian Mut. Ins. Co.</u>, 583 N.W.2d 548 (Mich.App. 1998); <u>Porowski v. Rehm</u>, 2008 WL 5273086 (N.J.App. 2008); <u>Bradley Real Estate Trust v. Plummer & Rowe Ins. Agency</u>, 609 A.2d 1233, 1235 (N.H. 1992); <u>Broderick Inv. Co. v. Strand & Nordstrom Stailey</u>, 794 P.2d 264, 266 (Colo.App. 1990); <u>Nat'l Marine, Inc. v. Glencourt, Ltd.</u>, 1998 WL 204734, 3 (E.D.La. 1998).

Appellants point to no "clear, precise and unequivocal evidence" establishing that anyone at Mulvey actually relied on the certificates,[48] much less

---

(Va. 1981) (*citing* <u>16 B.J. Appleman, Ins. Law & Practice</u>, §9088 at 565 (1981)). But, Appellants failed to show at least three other elements by clear, precise and unequivocal evidence, to-wit, that: "the representation or concealment was made with knowledge of the facts"; "the party to whom the representation was made was ignorant of the truth of the matter"; and "the party was induced to act upon it." <u>Boykins</u>. No evidence was offered on these points. In addition, given that One Beacon evidently afforded coverage, there was no evidence that Mulvey was "misled to [its] injury."

[48] Appellants never offered evidence that Mulvey actually received a certificate. In support of their estoppel argument below, Appellants submitted deposition testimony of the President of Mulvey, as follows:

    Q.    Are the subcontractors allowed on site before Mulvey receives the Certificates of Insurance?

that the reliance was reasonable under the circumstances.  Appellants merely assert that "[w]hen the certificate of insurance says you are an additional insured, it is reasonable to believe that you are an additional insured."  Brief, 40.  That tautology hardly substitutes for pertinent evidence, and it is in conflict with the views of the commentators and most of the courts that have examined the issue, not to mention Shenandoah.  Appellants' suggestion that it is "per se reasonable" to rely on a representation contained in a certificate, Brief, 41, is flatly contrary to the conclusions of Appleman, and most courts, that putative additional insureds may not rely on the assertions contained in a certificate, but instead given the disclaimer wording, they are "obligated to examine the policy to determine applicable coverages."  Appleman, at 3-44, 5-44.3.  *See also*, Nautilus Ins. Co. v. S. Vanguard Ins. Co., 899 F.Sup.2d 538 (N.D.Tex. 2012); Prime Ins. Syndicate v. Concepcion, 2008 U.S. Dist. LEXIS 17982 (D.Nev. 2008); Empire Fire & Marine Ins. Co. v. Bell, 55 Cal.App.4th 1410, 1423 n.25 (1997).

Despite the conspicuous admonitions apparent on the face of the certificates, and offering no evidence that they ever attempted to actually obtain the policy and read it, Appellants urge this Court to create new principles of Virginia law and

---

A.    We typically do not allow them to start the job unless we have a signed contract and we have their insurance in place, that is our company policy.  Does it happen sometimes, yes.

JA235 at 11-12.  Such testimony supports nothing.

adopt the unique position that through estoppel, a certificate can create coverage not otherwise provided under an insurance policy. Such a rule conflicts with the general principles embraced in <u>Norman</u>, is directly contrary to <u>Shenandoah</u>, and is at odds with the settled majority rule recognized in <u>Appleman</u>. This Court usefully refrains from creative applications of state law. *See,* <u>Talkington v. Atria Reclamelucifers Fabrieken BV</u>, 152 F.3d 254, 260 (4th Cir. 1998). But, even if this Court were inclined to make an "<u>Erie</u> guess,"[49] informed as it must be by these sources,[50] this Court must predict that the Virginia Supreme Court would reject the view advanced by Appellants.[51] The estoppel theory is legally unfounded and factually meritless.

### C. <u>The District Court Properly Rejected Appellants' "Insured Contract" Theory</u>

Relying upon <u>Uniwest</u>,[52] Appellants contend that even though Mulvey is not an insured or additional insured under the Bituminous policy, "'the insured

---

[49] <u>Breton, LLC v. Graphic Arts Mut. Ins. Co.</u>, 2009 U.S. Dist. LEXIS 104846, n.2 (E.D.Va. 2009) (internal citation omitted).

[50] Including <u>Liberty Mut. Ins Co. v. Triangle Indus</u>, 957 F.2d 1153, 1156 (4th Cir. 1992); <u>Wells</u>, *supra.*

[51] There is also authority elsewhere for a prediction that the Virginia Court would most likely follow the majority rule. <u>Vigortone AG Prods., Inc. v. AG Prods., Inc.</u>, 316 F.3d 641 (7th Cir. 2002); <u>Rekhi v. Wildwood Indus., Inc.</u>, 61 F.3d 1313 (7th Cir. 1995).

[52] Paradoxically, Appellants interpret <u>Uniwest</u> different in their conflicts-of-law public policy argument, raising doubt as to whether "this represents Virginia's

contract,' provision of the policy places a duty on Bituminous to defend, pay the

reasonable attorneys' fees, litigation expenses, and settlement amounts for third

parties who have a (sic) 'insured contract' with DCI." Brief, 41. This

misapprehension of <u>Uniwest,</u>[53] is Appellants' third, vastly different version of the

"insured contract" theory.[54] Importantly, this iteration was interposed after the

_____

approach," and then severely castigating the decision on the basis that "such an approach does not foster settlement and only protracts litigation." Brief, 23. They go so far as to condemn <u>Uniwest</u> as repugnant to West Virginia public policy.

[53] The argument also finds no textual support in the policy. The "insured contract provision," as Appellants term it, is actually a part of the "Definitions" section of the policy. JA115, ¶9. Otherwise, the term "insured contract" appears in all exception provisos within the "Contractual Liability" exclusion, which appears as ¶2.6 under the "Exclusions" -- the effect of which is to afford <u>the insured</u> coverage for liability under an "insured contract." JA105. No policy language extends coverage to any person or entities (not otherwise insured) based on their status as a party to an "insured contract."

[54] Originally, Appellants pursued the "stand in the shoes" concept embraced by West Virginia decisional law. <u>Marlin</u>; <u>Consolidation Coal</u>. *See,* JA197, ¶1. After the District Court ruled that Virginia law governs the case, Appellants abandoned "stand in the shoes," and argued that they were entitled to a declaration and that DCI was entitled to liability coverage under the Bituminous policy for *DCI's indemnity liability to Mulvey*. At that point, they were relying upon <u>KBS, Inc. v. Great Am. Ins. Co.</u>, 2006 U.S. Dist. LEXIS 88520 (E.D.Va. 2006), which of course, involved that sort of declaratory relief. Addressing this version in its March 31, 2011, Opinion, the District Court stayed the case pending the outcome of the New York arbitration. After Appellants dismissed the arbitration, they had to abandon their declaratory approach and their reliance on <u>KBS</u>. So, they totally altered the "insured contract" theory, again asserting that they were directly entitled to insurance coverage under the Bituminous policy, but they relied on <u>Uniwest</u>, which they incorrectly interpreted to support the illogical proposition that they need not prove an entitlement to contractual indemnity at all in order to invigorate a right to the benefits of the Bituminous policy.

District Court stayed the case specifically to afford the opportunity to establish in their New York arbitration that they were entitled to contractual indemnification, yet, they voluntarily abandoned the indemnification claim.[55]  This strategy resulted in a waiver.

Whether or not they waived the issue, Appellants' claim under Uniwest lacks merit.  Properly understood, Uniwest does not turn on any unique approach to "insured contracts."  Uniwest represents a straightforward application of several insurance policy provisions extending additional insured coverage, specifically, a provision in the subcontractor's commercial liability policy that included as an additional insured any person or entity that the named insured was required by contract to add as an additional insured to its insurance policies, and provisions in its umbrella policy insuring, as an additional insured, any person or entity covered as an additional insured under the underlying commercial policy, expressly including as an additional insured any person or entity "to whom you [the policyholder] are obligated by a written 'Insured Contract' to provide

---

[55] One can only speculate as to why Appellants decided to discontinue the New York arbitration.  However, New York law is remarkably inhospitable to contractual indemnification claims.  By statute in New York, indemnification agreements that seek to exempt the indemnitee from liability for negligence, in whole or in part, are unenforceable.  General Obligations Law, §5-322.1; Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co., 680 N.E.2d 1200 (N.Y. 1997).  Appellants may have anticipated losing the indemnification issue in a New York arbitration.

insurance…".   Given those provisions, <u>Uniwest</u> held, under the terms of the relevant policy, that the general contractor was expressly made an additional insured.  699 S.E.2d 225-226.  There are no provisions in the Bituminous policy that extend additional insured coverage.  Thus, <u>Uniwest</u> is inapposite.

Appellants cite no other Virginia decision that supports their current "insured contract" theory.   Their claim is unfounded even assuming the indemnification provision in the Subcontract is actually an "insured contract" [56] and further assuming that they are actually entitled to indemnification thereunder. Beyond that, as the District Court carefully set forth in its Opinion, JA699-716, every other court that has considered the issue has held that status as an indemnitee under a contractual indemnification provision, even one that meets the policy definition of "insured contract," does not entitle the indemnitee to the benefits and protections of the indemnitor's liability insurance.  *See*, cases cited in the District

---

[56] Not every contract of indemnification meets the standard commercial liability insurance policy definition of "insured contract."  The language must demonstrate a complete assumption of the "tort liability of another."  An assumption by the policyholder of its own tort liability will not suffice to qualify the agreement as an "insured contract."  <u>Va. Sur. Co., Inc. v. N. Ins. Co. of N.Y.</u>, 866 N.E.2d 149 (Ill. 2007); <u>Lubrizol Corp. v. Nat'l Union Fire Ins. Co.</u>, 200 Fed.Appx. 555 (6th Cir. 2006); <u>Am. Econ. Ins. Co. v. Tx. Instruments, Inc.</u>, 2006 WL 616017 (N.D.Tex. 2006); <u>Allianz Ins. Co. v. Gold Coast Partners, Inc.</u>, 684 So.2d 336 (Fla.App. 1996); <u>Mount Vernon Fire Ins. Co. v. Kent Dev. of N.Y., Inc.</u>, 1996 WL 521426 (S.D.N.Y. 1996); <u>Energy Corp. of Am.</u>  The indemnification agreement involved herein requires DCI to indemnify for liability arising from DCI's acts.

Court's Order of April 3, 2013 (Docket No. 192). *See also*, Int'l Group v. Cincinnati Ins. Co., 2007 U.S. Dist. LEXIS 65798, 2667984 (E.D.Pa. 2007); Tremco, Inc. v. Mfr. Ass'n Ins. Co., 832 A.2d, 1120, 1121-1122 (Pa.Super. 2003); Alex Robertson Co. v. Imperial Cas. & Indem. Co., 8 Cal.App.4th 338 (1992); Wainwright v. Charles Constr. Co., Inc., 755 N.Y.S.2d 751 (N.Y.App. 2003); Am. Ref-Fuel Co. of Hempstead v. Resource Recycling, 671 N.Y.S.2d 93 (N.Y.App. 1998); Penske Truck Leasing Co., L.P. v. Home Ins. Co., 674 N.Y.S.2d 400 (N.Y.App. 1998).[57]

Finally, promoting the so-called "Eight Corners" approach, Appellants contend that the allegations of the underlying wrongful death complaint at least triggered a duty on the part of Bituminous to defend them under the policy. Brief, 42-44. Although they enthusiastically cite abundant authority for the proposition that an insurer owes a duty to defend when the complaint alleges facts which potentially fall within the scope of the risks covered by the policy, Lerner v. General Ins. Co. of Am., 245 S.E.2d 249 (Va. 1978), Appellants completely overlook that the duty to defend runs *to the insured*. Lerner at 251 ("[t]he insurer

---

[57] Paradoxically, Appellants cite Capitol Env't. Serv., Inc. v. N. River Ins. Co., 536 F.Supp.2d 653 (E.D.Va. 2008). Brief, 42-44. That case is totally consonant with the line of cases relied on by the District Court. The Court simply held that the insurer was required to provide a defense to its own policyholder as to a claim for contractual indemnification.

has both 'the right and the duty to defend any suit *against the insured.*'")
(emphasis added).  Appellants rely very heavily on <u>KBS</u>.  But, in that case, the
general contractor, KBS <u>was</u> <u>actually</u> <u>made</u> <u>an</u> <u>additional</u> <u>insured</u> <u>under</u> <u>the</u>
<u>subcontractor's</u> <u>liability</u> <u>policy</u>, as the District Court mentions thrice in its Opinion.
The problem here is and has always been that Mulvey was not made an additional
insured under the policy.  There is no Virginia authority for the proposition that an
insurer must defend claims against strangers that have no rights under the policy.

### D.  The District Court Properly Granted Leave To Amend

After the District Court ruled that Virginia law governs this case, B&B filed
motions for summary judgment against both Appellants and DCI based, in part, on
the applicable statute of limitations periods under Virginia law. DCI filed a 16-
page response; one paragraph of that response addressed its argument that B&B
did not raise the statute of limitations defense in its Answer.  Appellants did not
address or even mention the statute of limitations argument in their response to
B&B's summary judgment motion.

On October 15, 2010, while summary judgment motions were pending,
B&B filed a motion to amend its Answers to assert the statute of limitations as an

affirmative defense.[58]  Although DCI opposed the motion, Appellants <u>did</u> <u>not</u> and, in fact, filed no response at all to the motion for leave to amend.[59]  It was not until after a status conference on February 16, 2011, at which the District Court said that it was going to dismiss DCI from this case on jurisdictional grounds and pointed out that there was no other objection to B&B's amendment on the record, that Appellants made a verbal objection.  On February 21, 2011, Appellants then filed a document entitled "Plaintiffs' Response to Rulings of February 16, 2011."  In that document, Appellants noted their verbal objection to the motion at the Status Conference five days earlier and proceeded to argue for the first time issues related to B&B's statute of limitations defense.  JA548-551.

On March 30, 2011, the District Court granted B&B's motion to amend its Answer.  The District Court pointed out that Appellants did not file a response to the motion, then stated:

---

[58] In the Answers to both the Amended Complaint filed by Appellants and the Intervenor Complaint filed by DCI, B&B reserved the right to raise additional defenses.  JA222.

[59] Appellants' statement that "[r]ecognizing that the arguments would be the same, Mulvey adopted DCI's objection to the amendment of the Complaint (sic), rather than file a separate brief," rings hollow.  Brief, 51.  It was not until February 21, 2011, that Mulvey attempted to adopt DCI's objection, months after the time for filing a response to the motion had passed under the local rules.  Indeed, Mulvey did not need to file a separate brief if the arguments were the same; it could have filed a joinder in DCI's objection.  Instead, it did not even attempt to adopt DCI's filing until they were reminded by the District Court that they had not objected to the amendment.

> [P]laintiffs did file a "Response to Rulings of February 16, 2011." In that response, which was not authorized by either the court or its local rules, plaintiffs stated that they seek to 'formally join, adopt, and incorporate any motions, responses, pleadings, objections, or other submissions, including but not limited to affidavits, filed or made by DCI/Shires as their own.'…The rest of plaintiffs' filing is essentially a late-filed opposition to Brown & Brown's argument that the statute of limitations bars their third-party beneficiary claim…Other than contending that they objected to Brown & Brown's Motion to Amend at the status conference, plaintiffs' filing does not address the merits of the Motion to Amend. Specifically, it does not address the prejudice, if any, plaintiffs would suffer if amendment is allowed.

JA582. Despite Appellants' failure to address the merits of the motion, the District Court addressed the "additional discovery" argument made by DCI on which Appellants sought to rely. The District Court stated that it "cannot see how Brown & Brown's assertion of a statute of limitations defense would necessitate the need for additional discovery. The information needed to refute the defense would be the same evidence that plaintiffs would need to pursue their claims against Brown & Brown." JA587. Although the District Court stated that it could not necessarily say that B&B had shown good cause for the delay in seeking to amend its Answer, it held that in the absence "of any prejudice to plaintiffs," B&B should be given leave to amend, "especially" under the unique facts and circumstances of this case where the record shows no bad faith or dilatory motive on the part of B&B. JA587.

Appellants' sole argument on this issue is that it was reversible error for the District Court to allow B&B to amend its Answer "despite significant prejudice to the parties."  Brief, 52.  This argument has no merit.  First, as recognized by the District Court, Appellants did not even attempt to show prejudice, despite having the burden of doing so. Atl. Bulk Carrier Corp. v. Milan Express Co., Inc., 2010 WL 2929612, *4 (E.D.Va. 2010).  Second, although Appellants contend they never conducted any substantive discovery on the statute of limitations because they were unaware it was an issue (same argument made by DCI), in point of fact, throughout the many years of this litigation, Appellants served no discovery at all on B&B.  If they had served any discovery on their claims, it necessarily would have informed the statute of limitations issue.  Third, to the extent Appellants contend in their Brief that they suffered the same prejudice as DCI from this lack of discovery, there was no prejudice.  From the time they became a party, DCI conducted no discovery and remained completely passive, refraining from any participation in the case at all until filing a dispositive motion.  Fourth and finally, at no point while this case was pending before the District Court did Appellants raise the need for further discovery or seek to reopen discovery on this issue.[60]

---

[60] Furthermore, in its reply memorandum in support of the motion to amend, B&B stated that, if the District Court determined that there were facts to be discovered on the statute of limitations defense, B&B would not object to having discovery

JA587.   It is disingenuous for them now to contend that they were "severely prejudiced" by this lack of discovery.

Amendment of pleadings under Rule 15(a) should be freely given absent "undue delay, bad faith or dilatory motive on the part of the movant…, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.…"  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  The District Court specifically found an absence of prejudice to Appellants,[61] no bad faith or dilatory motive on the part of B&B, and that it was not clear that an amendment would be futile.   Accordingly, the District Court did not abuse its discretion in granting the motion to amend and the ruling should be affirmed.

### E.  <u>West Virginia's Borrowing Statute Dictates That Virginia's Statute Of Limitations Applies to Bar Appellants' Third Party Beneficiary Claim</u>

Appellants claim that DCI's request that Mulvey be added as an additional insured to its policy with Bituminous constitutes a contract between DCI and B&B to which Mulvey was an intended third-party beneficiary. Appellants further claim that B&B breached this obligation by not taking the necessary steps to make sure that Mulvey was added as an additional insured to DCI's policy.  Even assuming

_____

reopened, there being three months remaining before trial.  Appellants, at that juncture, could have pointed to their need for discovery, but did not.

[61] The fact that Appellants' claims may be barred by the statute of limitations does not amount to prejudice sufficient to defeat an amendment. <u>Lynam v. Foot First Podiatry Center, P.C.</u>, 919 F.Supp. 1141, 1149, n. 7 (N.D.Ill. 1996).

that DCI's request constituted a contract, it was at most an oral contract.  As correctly determined by the District Court, the asserted breach -- B&B's alleged omission -- accrued in Virginia where B&B is located.  *See,* JA255, JA270. Accordingly, under West Virginia's borrowing statue, W.Va. Code §55-2A-2, Virginia's shorter statutory limitations period bars Mulvey's claim.[62]

When sitting in diversity jurisdiction, district courts must follow the applicable state statute of limitations.  <u>Guar. Trust Co. v. York</u>, 326 U.S. 99 (1945); <u>Wade v. Danek Med., Inc.</u>, 182 F.3d 281, 288-89 (4th Cir. 1999).  To determine the applicable state statute of limitations, courts must apply the conflicts-of-law rules of the forum state.  <u>Klaxon Co.</u>; <u>Reed v. Lockheed Aircraft Int'l, A.G.</u>, 1991 U.S. App. LEXIS 1096, at *2 (4th Cir. 1991).

Mulvey correctly states that, under West Virginia's conflicts-of-law rules, the determination of the applicable statute of limitations is generally regarded as a procedural matter.  <u>McKinney v. Fairchild Int'l, Inc.</u>, 487 S.E.2d 913, 922 (W.Va.

---

[62] Additionally, as argued in the District Court, Mulvey did not adduce the requisite evidence of a clear and definite intent to confer a direct benefit on Mulvey.  <u>Collins</u>, 636 S.E.2d at 446-47.  Mere incidental benefit derived from a party's proper performance of its duties is insufficient.  <u>Valley Landscape</u>, 237 S.E.2d at 124.  At most, the evidence shows that DCI requested that B&B add Mulvey as an additional insured on its existing policy.  Such evidence shows nothing more than an intention to facilitate DCI's performance under the Subcontract with Mulvey.  <u>Collins v. First Union Nat'l Bank</u>, 636 S.E.2d 442, 447 (Va. 2006).  Mulvey provided no response to this argument below.

1997).    West Virginia's borrowing statute, however, constitutes part of its conflicts-of-law rules and specifically applies to the determination to be made in this matter.    Harrison v. Piedmont Aviation, Inc., 432 F.Supp. 980, 981 (S.D.W.Va. 1977) ("Section 6 of the Restatement states that 'a Court… will follow a statutory directive of its own statute on choice of law.'"); *see also,* McKinney, 487 S.E.2d at 922.    West Virginia's borrowing statute provides: "The period of limitation applicable to a claim accruing outside of this State shall be either that prescribed by the law of the place where the claim accrued or by the law of this State, whichever bars the claim."   W.Va. Code §55-2A-2.[63]

Appellants' Amended Complaint asserts that DCI and B&B entered into an agreement by which B&B "was to secure liability coverage for Mulvey" and that Appellants were a third-party beneficiary to this agreement.    JA203.    Appellants further assert that B&B "breached the agreement to secure coverage by failing to procure the necessary coverage for Mulvey."    JA203.    Appellants' Brief clarifies that the actual request was for Mulvey to be added as an additional insured.   Brief, 51, *quoting* JA272.    At all times relevant to these allegations, both B&B and its

---

[63]  W.Va. Code §55-2-17 further provides: "[U]pon a contract which was made and was to be performed in another state or country, by a person who then resided therein, no action shall be maintained after the right of action thereon is barred either by the laws of such state or country or by the laws of this state."   The alleged contract at issue in this case was made and to be performed in Virginia by a Virginia corporation. *See,* JA255, 270, 274, 327, 355.

representatives dealing with DCI were located in Virginia.  *See,* JA255, 270.

Accordingly, any act or failure to act by B&B, as asserted by Appellants, occurred

in Virginia.  Appellants' cause of action for breach of contract, therefore, accrued

in Virginia.  Accordingly, under the borrowing statute, Virginia's shorter statute of

limitations for breach of contract actions governs.

West Virginia's statute of limitations prescribes a ten-year period for claims

on written contracts and a five-year period for claims on oral contracts.  W.Va.

Code §55-2-6.  Virginia's statute of limitations prescribes a five-year statute of

limitations for claims on written contracts and a three-year statute of limitations for

claims on oral contracts.  Va. Code §8.01-246(2), (4).  Accordingly, Virginia's

shorter limitations periods apply.

The District Court correctly held that "[a]ssuming there was a contract

between B&B and DCI to add Mulvey to the Bituminous policy, it is undisputed

that any such contract was oral."  JA609-610.  Appellants cite no authority for their

conclusory proposition that the certificate sent to DCI by B&B constitutes a

written contract.  Nor does any such authority exist.  First and foremost the

certificates expressly state:  "This certificate is issued as a matter of *information*

*only* and confers no rights on the certificate holder."  JA445-446 (emphasis added).

The parties clearly did not intend these documents to constitute a written contract.

The Supreme Court of Virginia has recently held that, in determining whether a writing embodies an agreement for purposes of the statute of limitations, the court must look to the directives contained in the writing itself.  Gerald T. Dixon, Jr., LLC v. Hassell & Folkes, P.C., 723 S.E.2d 383, 385 (Va. 2012) (finding a writing did not constitute a written contract because the writing itself required receipt of an executed copy -- which never occurred); Stauffer v. Fredericksburg Ramada, Inc., 411 F.Supp. 1136, 1137 (E.D.Va. 1976) ("The written documents submitted as exhibits by plaintiff, whether construed separately or together, do not indicate, in the slightest that the parties intended said documents to constitute a written contract.")  Furthermore, to constitute a written contract for statute of limitations purposes, the writing "must show on its face a complete and concluded agreement between the parties."  Newport News, 32 S.E. 789 at 790. Where the writing omits terms such as subject matter or consideration, therefore, it cannot constitute a written contract for statute of limitations purposes.  Marley Mouldings, Inc. v. Suyat, 970 F.Supp. 496, 499-500 (W.D. Va. 1997); Goodenough v. Province, 78 Va.Cir. 263, 265-66 (Charlottesville 2009).  The certificates clearly do not contain any complete agreement between DCI and B&B. Indeed, they recite little more than the type of insurance coverage in place and the

effective dates of that coverage. Therefore, the purported contract is at most an oral contract for statute of limitations purposes.

The District Court correctly found that the last certificate indicating Mulvey's status as an additional insured is dated August 9, 2002, JA610, and therefore any breach of contract occurred no later than that date. Mulvey filed the present claim on October 11, 2007, more than two years after the three-year limitations period for oral contracts expired.[64]

West Virginia's discovery rule, under which "the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know" of the claim, Dunn v. Rockwell, 689 S.E.2d 255, 262 (W.Va. 2009), has no application in the present case. As set forth above, Virginia's statute of limitations governs. Accordingly, its rules regarding its application and, thus, the timeliness of Mulvey's claim, also govern. *See*, McKinney, 487 S.E.2d at 928-29 (applying Kentucky's discovery rule to determine the timeliness of a claim that accrued in Kentucky); Blais v. Allied Exterminating Co., 482 S.E.2d 659, 661 (W.Va. 1996). As correctly held by the District Court, under Virginia law, a right of action for breach of contract accrues and the statute of limitations begins to run "when the breach of contract occurs…and not when the resulting damage is

---

[64] Even the five-year period applicable to written contracts would have expired by August 2007.

discovered." JA609, *citing* Va. Code §8.01-230. In the present case, the statute of limitations began to run when B&B allegedly failed to take the action necessary to ensure that Bituminous added Mulvey as an additional insured to DCI's policy, not when Mulvey discovered that it had no coverage under the policy.[65]

Even if West Virginia's discovery rule did apply in the present case, it provides that the statute of limitations begins to run "when the plaintiff knows, *or by the exercise of reasonable diligence, should know*" of its claim. Dunn, 689 S.E.2d at 262 (*citing* Gaither v. City Hosp., Inc., 487 S.E.2d 901, 906 (W.Va. 1997)) (emphasis added); Harris v. Jones, 550 S.E.2d 93 (W.Va. 2001) (same) (emphasis added). In the present case, Mulvey should have discovered that it was not added as an insured as early as August 2002. The certificate specifically stated that DCI's insurance policy's terms were controlling. JA044, 259, 260-64, 445-46.

---

[65] Although Mulvey has not appealed the District Court's dismissal of its professional negligence claim, Brief, 2, it makes passing reference to it in its brief, Brief, 51, asserting that West Virginia's discovery rule would apply to toll the statute of limitations on this claim. It is unclear why Mulvey has included this point given that it has not appealed this claim. Moreover, the District Court disposed of this claim, not under the statute of limitations, but under the rule requiring privity of contract in a professional negligence action. JA610-11, *citing* Ward v. Ernst & Young, 435 S.E.2d 628, 632 (Va. 1993) (holding that privity of contract is an indispensable element of any such claim). In the present case, because it was undisputed that Mulvey was not in privity of contract with B&B, its professional negligence claim failed as a matter of law. Even if Mulvey could overcome this fatal defect, for the reasons discussed *infra*, its claim would still be barred by the statute of limitations applicable to contract actions.

Moreover, Mulvey was aware that it would be exposed to great risk were it not added as an additional insured. Accordingly, it easily could have confirmed its status by requesting a copy of the policy itself. *See,* W.O. Grubb Steel Erection, Inc. v. 515 Granby, LLC, 78 Va.Cir. 463, 467-68 (Norfolk 2009).

In sum, because any third-party beneficiary claim that Mulvey may have had against B&B accrued in Virginia, where B&B allegedly breached its purported obligation, West Virginia's borrowing statute requires application of Virginia's shorter statute of limitations. Under Virginia's statute of limitations for claims on oral contracts, Mulvey's claim against B&B was long since time-barred.

## CONCLUSION

At bottom, Appellants' case is confounded by two insuperable obstacles: one, there is no coverage under the policy; and two, because Virginia law controls, they cannot profit from application of several idiosyncratic aspects of West Virginia law. The judgment of the District Court must be affirmed.

Respectfully submitted:

By:    /s/ Avrum Levicoff
       Avrum Levicoff, Esquire
       W.Va. I.D. #: 4549
       Levicoff, Silko & Deemer, P.C.
       650 Smithfield Street, Suite 1900
       Pittsburgh, PA  15222

       *Counsel for Appellee,*
       *Bituminous Casualty Corporation*

By:    /s/ Pamela C. Deem
        Pamela C. Deem, Esquire
        W.Va. I.D. #:  976
        Kay Casto & Chaney, PLLC
        707 Virginia Street, East, Ste. 1500
        Charleston, WV  25301

        *Counsel for Appellee,*
        *Brown & Brown Insurance*
         *Agency of Virginia, Inc.*


By:    Henry Willett, III, Esquire
        Henry Willett, III, Esquire
        Va. I.D. #:  44655
        Christian & Barton, LLP
        909 E. Main Street, Suite 1200
        Richmond, Va  23219

        *Counsel for Appellee,*
        *Brown & Brown Insurance*
         *Agency of Virginia, Inc.*

## <u>CERTIFICATIONS</u>

Avrum Levicoff, attorney for Appellant, is a member of the bar of this Court.

The text of the electronically filed version of this Brief is identical to the paper copies served on the Court and opposing counsel.

No virus was detected by the antivirus Symantec software program which protects the computer system that stored and transmitted this Brief.

Respectfully submitted:

By:    /s/ Avrum Levicoff
Avrum Levicoff, Esquire
W.Va.. I.D. #:  4549
Levicoff, Silko & Deemer, P.C.
Centre City Tower, Suite 1900
650 Smithfield Street
Pittsburgh, PA  15222
(412) 434-5200

*Counsel for Appellee,*
*Bituminous Casualty*
*Corporation*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

1.    This Brief complies with the type-volume limitation of Fed.R.App.P.

32(a)(7)(B) because:

- This brief contains 15,246 words, excluding the parts of the brief

    exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.    This Brief complies with the typeface requirements of Fed.R.App.P.

32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

- This Brief has been prepared in proportionally spaced typeface using

    Microsoft Word 2013 in 14pt. Times New Roman type style.


Respectfully submitted:

By:    __/s/ Avrum Levicoff____
        Avrum Levicoff, Esquire
        W.Va.. I.D. #:  4549
        Levicoff, Silko & Deemer, P.C.
        Centre City Tower, Suite 1900
        650 Smithfield Street
        Pittsburgh, PA  15222
        (412) 434-5200

        *Counsel for Appellee,*
        *Bituminous Casualty*
        *Corporation*

{L0540241.1 }

64

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MULVEY CONSTRUCTION, INC., and ONE
BEACON INSURANCE COMPANY,

           Appellant,

    v.

BITUMINOUS CASUALTY CORPORATION,
and BROWN & BROWN INSURANCE
AGENCY OF VIRGINIA, INC.,

           Appellees.

C.A. No.:  13-1571

Electronic Filing

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 29, 2013, I electronically filed the foregoing

**Appellee's Brief** with the Clerk of Court using the CM/ECF system which will

send notification of such filing to the following CM/ECF participants:

Stuart McMillan, Esquire
Thomas M. Hancock, Esquire
Bowles Rice McDavid Graff & Love
600 Quarrier Street
Charleston, WV  25301

Henry Willett, III, Esquire
Christian & Barton, LLP
909 East Main Street, Suite 1200
Richmond, VA  23219

Pamela Deem, Esquire
Kay Casto & Chaney, PLLC
707 Virginia Street, East, Suite 1500
Charleston, WV  25301

By:   /s/ Avrum Levicoff
Avrum Levicoff, Esquire
ALevicoff@LSandD.net
W.Va. I.D. #:   4549
Levicoff, Silko & Deemer, P.C.
Centre City Tower, Suite 1900
650 Smithfield Street
Pittsburgh, PA  15222-3911
412-434-5200

*Counsel for Appellee,*
*Bituminous Casualty Corporation*